COCHRANE v. MESICK CONSOLIDATED SCHOOL
DISTRICT BOARD OF EDUCATION.

1. SCHOOLS AND SCHOOL DISTRICTS—EXTRACURRICULAR ACTIVITIES—
MARRIED STUDENTS—EQUALLY DIVIDED COURT—MOOT QUESTION.
Denial of mandamus to compel board of education to admit
married students to participation in extracurricular (co-
curricular) activities of the high school, on the basis that
regulation prohibiting such participation was void, is affirmed
by an equally divided court after the question has become
moot (CLS 1956, §§ 340.578, 340.614).

2. COSTS—PUBLIC QUESTION—MARRIED HIGH SCHOOL PUPILS—EX-
TRACURRICULAR ACTIVITIES.
No costs are allowed on appeal in mandamus proceeding to com-
pel board of education to permit married high school pupils,
otherwise not disqualified, to participate in extracurricular
(co-curricular) activities, since a public question and only
public agencies are now involved.

Appeal from Wexford; Campbell (Howard L.), J.
Submitted January 6, 1960. (Docket No. 23, Calen-
dar No. 48,304.) Decided June 7, 1960.

Mandamus by Ronald Cochrane and David Shive-
ly, and their next friends, Robert Cochrane and Clare
Shively, against the Board of Education of the
Mesick Consolidated School District to force the
board to admit them, as married students, to partici-
pation in all school sponsored activities. Writ
denied. The Attorney General intervened as party

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 1160.
[2] 35 Am Jur, Mandamus § 393.

plaintiff.   Plaintiffs and intervening plaintiff appeal.
Affirmed by an equally divided court.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, and *Maxine Boord Virtue,* Assistant Attorney General, for the intervening plaintiff.

*Miltner & Miltner (Charles H. Miltner,* of counsel), for defendant.

KELLY, J. *(for reversal).*  The attorney general intervened and appeals from a decision of the trial court holding that defendant school district did not violate the statute guaranteeing to all students an equal right to public educational facilities by excluding married high school students from participation in "co-curricular activities."

Intervenor and appellant states:

"The attorney general, in the exercise of his duty, respectfully requests the Supreme Court to provide an authoritative determination of the questions referred to, and takes the initiative in this appeal for the purpose of resolving these important public questions.  * * *

"It is submitted by the attorney general that the action of the school board, in taking what it frankly admits is punitive action, designed to humiliate and ridicule the plaintiff students before their classmates so as to discourage other marriages, is violating the public policy of the State by attacking the married status of these students as 'wrongdoing', and that the rule in question is clearly void for that reason alone.  The concern of the law is to protect, not to attack, the state of matrimony, and to exalt, not to undermine, the security of legal marriages.  * * *  They are entitled, by law and public policy, to the respect and security of community acceptance in their married status, as well as to all the benefits

of equal access to all public educational facilities, including their earned status in the co-curricular activities. To deprive them of the intangible security of their pride of achievement in the 'glamor' titles and offices so important to the high school student, at a time of life when they are peculiarly sensitive to acceptance and approval by their contemporaries, is to interfere not only with their education but also with their marriages, by undermining their morale in this respect, thus condemning their marital status through the exclusionary rule. Instead of making the status of marriage itself an occasion for stripping students of achievement and rank, so as to deprive them of the admiration of fellow students, it is the duty of the school board to respect and exalt the status of matrimony. * * * If, however, the community is to take a position against high school marriages, the way to do it is through legislation, as by raising the age limit for marriage, not through school board interference with the prerogatives of the legislature, the parents, and the church."

David Shively was married July 27, 1958, and at the time of the hearing was 18 years of age and a senior in defendant school.

Ronald Cochrane was also a senior, 18 years of age, in the same school at the time of the hearing, and he was married August 17, 1958.

Both boys were married with the approval of their parents and had participated in sports and physical education at defendant school and expected to do so during their senior year.

August 28, 1958, the school board adopted the following policy or rule:

"Married students attending school shall not be eligible to participate in any co-curricular activities: *i.e.,* competitive sports, band, glee club, class and club officers, cheer leading, physical education, class plays and etc."

A petition for writ of mandamus to compel the school board to admit the 2 students to co-curricular activities was filed by the 2 students and their fathers.

At the hearing, the superintendent of defendant school district testified in regard to David Shively and Robert Cochrane as follows:

"*Q.* If you were to describe these boys, briefly, how would you describe them?

"*A.* That they are top-notch boys from the standpoint of their being good students in a school.

"*Q.* How is their behavior?

"*A.* Above reproach.

"*Q.* Has there been any discipline problem with them?

"*A.* No, there has not.

"*Q.* Have you had any difficulty with them since they were married? As far as any discipline is concerned.

"*A.* Directly, I would say, no.

"*Q.* Have you heard any reports that they have improperly conducted themselves about the school premises in any way since their marriage?

"*A.* No, sir.

"*Q.* Have you heard any reports that they have been guilty of any indiscreet language around the school, or in the presence of students, since their marriage?

"*A.* No, sir."

There was introduced in evidence an exhibit entitled, "Reasons for Adoption of Board Policy Concerning Married Students," containing the following:

"1. Adopted for the possible bad influence when married stduents are forced to be closely associated with their unmarried peers in any way other than the more formal circumstances; that is, classrooms, under the immediate supervision of a teacher.

"2. Students today are more ready to accept the actions of their peers as the thing to do. If any

married students are in a position of idolization the more desirous is the group to mimic.

"3. It is felt that married students need all the extra time available to provide a proper family life and time spent in co-curricular activities is not conducive to this end.

"4. When a student enters into marriage he assumes adulthood and consequently enters into another society, removed from the less mature students and also removed from parental guidance."

Sections 355 and 356 of the school code of 1955 (CLS 1956, §§ 340.355, 340.356 [Stat Ann 1959 Rev §§ 15.3355, 15.3356]) provide that all students over 5, if resident of a school district, shall have an equal right to attend school. The sole limitation on this right is that portion of section 355 authorizing the grading of schools according to the intellectual progress of the pupil and section 613 (CLS 1956, § 340.613 [Stat Ann 1959 Rev § 15.3613]) empowering the board to suspend or expel "any pupil guilty of gross misdemeanor or persistent disobedience, or one having habits or bodily conditions detrimental to the school, whenever in its judgment the interests of the school may demand it." This right is qualified, in the case of physical handicap, by the requirements that a certified statement be obtained from a physician, and in the case of a mental handicap by the requirement that a psychiatrist or other appropriate agency approved by the superintendent of public instruction make a statement that the child is incapable of benefiting from public school attendance.

Local school boards are authorized to make rules and regulations by section 614 of the school code (CLS 1956, § 340.614 [Stat Ann 1959 Rev § 15.3614]), which provides:

"Every board shall have authority to make reasonable rules and regulations relative to anything whatever necessary for the proper establishment, main-

tenance, management, and carrying on of the public schools of such district, including regulations relative to the conduct of pupils concerning their safety while in attendance at school or en route to and from school."

In *Tanton* v. *McKenney,* 226 Mich 245 (33 ALR 1175), this Court reviewed the propriety of expulsion of an 18-year-old Michigan State normal college student and defined the rights of school authorities to suspend or expel and the review of such action by the courts. We reiterate and adopt the following from that decision (p 249):

" 'The enjoyment of the right of attending the public schools is necessarily conditioned on compliance by pupils with the reasonable rules, regulations, and requirements of the school authorities, breaches of which may be punished by suspension or expulsion. Ordinarily the school authorities have the right to define the offenses for which the punishment of exclusion from school may be imposed, and to determine whether the offense has been committed, the limitation on this authority being that it must in both respects be reasonably exercised.' * * * 24 RCL, Schools, § 105, p 646.

" 'Acting reasonably within the powers conferred, it is the province of the board of education to determine what things are detrimental to the successful management, good order, and discipline of the schools and the rules required to produce these conditions. The presumption is always in favor of the reasonableness and propriety of a rule or regulation duly made. The reasonableness of regulations is a question of law for the courts.' 24 RCL, Schools, § 24, p 576."

This Court in *Attorney General, ex rel. Wendrow,* v. *Knapp,* 310 Mich 385, 391, commented on legislative action recognizing the importance and integral part of physical education in the general plan of education, by stating:

"The statute, CL 1929, § 7568 (Stat Ann § 15.608),* provides:

" 'Any school district may operate a system of public recreation and play grounds; acquire, equip, and maintain land, buildings, or other recreational facilities; employ a superintendent of recreation and assistants; vote and expend funds for the operation of such system.'·

"It has· been well said that education of a child means much more than merely communicating to it the contents of textbooks. This need is recognized by the mentioned statute relative to physical education as a component part of the public school curriculum."

The right to contract marriage at an age when the majority of our youth are attending high school was granted by the legislature when it provided (CLS 1956, § 551.103 [Stat Ann 1957 Rev § 25.33]):

"Every male or female who shall have attained the full age of 18 years shall be capable by law of contracting marriage."

Extensive research has failed to disclose a decision of this, or any other supreme court, dealing with the right of a school board to deny married students an opportunity to participate in extracurricular activities. We shall comment on and quote from the only 3 known supreme court decisions dealing with the right to expel or suspend solely on the ground that the student is married (Mississippi, Kansas, and Tennessee).

In *McLeod* v. *State, ex rel. Colmer, District Attorney* (1929), 154 Miss 468 (122 So 737, 63 ALR 1161), an ordinance adopted by the school trustees barring married persons, otherwise eligible, from public schools, was held unreasonable and void under the statute giving the school trustees authority "to

* For comparable provision in the school code of 1955, see CLS 1956, § 340.786 (Stat Ann 1959 Rev § 15.3786).—REPORTER.

prescribe and enforce rules, not inconsistent with law or those prescribed by the State board of education, for their own government and government of schools, and  *  *  *  to suspend or dismiss pupils, when the best interest of the school make it necessary."

The Mississippi supreme court, at pages 474, 475, said:

"The court will not interfere with the exercise of discretion of school trustees in matters confided by law to their discretion, unless there is a clear abuse of discretion or a violation of law. The court will not consider whether such rules and regulations are wise or expedient, but merely whether they are a reasonable exercise of the authority conferred upon the trustees by law. It is peculiarly within the province of the trustees to determine what things are detrimental to the successful management, good order, and discipline of the schools in their charge, and the rules required to produce those conditions. The presumption is always in favor of the reasonableness and propriety of any such rule.  *  *  *

"The question, therefore, is whether or not the ordinance in question is so unreasonable and unjust as to amount to an abuse of discretion in its adoption. *  *  *  The ordinance is based alone upon the ground that the admission of married children as pupils in the public schools of Moss Point would be detrimental to the good government and usefulness of the schools. It is argued that marriage emancipates a child from all parental control of its conduct, as well as such control by the school authorities; and that the marriage relation brings about views of life which should not be known to unmarried children; that a married child in the public schools will make known to its associates in schools such views, which will therefore be detrimental to the welfare of the school. We fail to appreciate the force of the argument. Marriage is a domestic relation highly favored by the law. When

the relation is entered into with correct motives, the effect on the husband and wife is refining and elevating, rather than demoralizing. Pupils associating in school with a child occupying such a relation, it seems, would be benefited instead of harmed. And, furthermore, it is commendable in married persons of school age to desire to further pursue their education, and thereby become better fitted for the duties of life. And they are as much subject to the rules of the school as unmarried pupils, and punishable to the same extent for a breach of such rules."

In *Nutt* v. *Board of Education of the City of Goodland* (1929), 128 Kan 507 (278 P 1065), a writ of mandamus was granted against a board of education compelling it to admit the plaintiff's daughter to the public high school as a pupil despite a ruling of the board declining to admit her for the reason that she was married. She had conceived a child out of wedlock, married the child's father prior to the baby's birth, and still later had been abandoned by her husband. The court noted that the board had statutory power to control and govern the school, and to exclude therefrom any one who may be or become undesirable for physical or moral reasons.

The Kansas supreme court stated (p 509):

"The public schools are for the benefit of children within school age, and efficiency ought to be the sole object of those charged with the power and privilege of managing and conducting the same, and while great care should be taken to preserve order and proper discipline, it is proper also to see that no one within school age should be denied the privilege of attending school unless it is clear that the public interest demands the expulsion of such pupil or a denial of his right to attend. On the record   *   *   * we are of the opinion the evidence was insufficient to warrant the board in excluding plaintiff's daughter.   *   *   * It is the policy of the State to encourage

the student to equip himself with a good education. The fact that the plaintiff's daughter desired to attend school was of itself an indication of character warranting favorable consideration. Other than the fact that she had a child conceived out of wedlock no sufficient reason is advanced for preventing her from attending school. Her child was born in wedlock and the fact that her husband may have abandoned her should not prevent her from gaining an education which would better fit her to meet the problems of life."

In *State, ex rel. Thompson,* v. *Marion County Board of Education* (1957), 202 Tenn 29 (302 SW2d 57), mandamus proceedings sought to compel restoration to enrollment of a high school student expelled for remainder of term during which she married. The chancery court of Marion county denied the relief sought. The Tennessee supreme court stated:

"In November of 1955 the Marion county school board adopted the resolution under attack here. It is first recited therein that 'there has arisen a serious problem concerning the marriage of high school students in the various high schools' of the county, and that the board 'is of the opinion that the said practice is detrimental to the progress and general well being of the operation of the schools.' Then it was resolved that any student who marries during the school term shall be automatically 'expelled * * * for the remainder of the current term.' If the marriage takes place during vacation such student 'shall not be allowed to attend any county school during the term next succeeding.' This resolution was promptly made known to the students in each of the high schools.

"In February of 1957 the young lady involved in this litigation married. She was 18 years old, and was in her fourth year of attendance as a student in the high school at Jasper. She expected to gradu-

ate in May. Her scholastic attainments had been consistently high.

"The board, in accordance with the terms of the aforementioned resolution, promptly forbade her the privilege of attending school the remainder of this school year. She can re-enter the next school year. * * *

"If the representations made to the county board of education by every high school principal in Marion county as to their respective observations and experiences on this subject is at all accurate, then married students, and by virtue of the psychological effect thereof, for a few months immediately following marriage, have a detrimental influence upon fellow students, hence, a detrimental effect upon the progress and efficiency of the school. Therefore, if these principals know whereof they speak, the attendance during such period of such married students in the schools is within the bounds of reasonable regulation by the board.

"We are accustomed to accept the testimony of experts in the various fields of human activity as to what is reasonably necessary for the welfare of the particular activity as to which this expert therein is testifying. No reason is suggested as to why this practice should not be followed when the witness is an expert in the field of operating public high schools. Certainly the principals of the high schools in question should be regarded by reason of training, experience, and observation as possessing particular knowledge as to the problem which they say is made by the marriage and uninterrupted attendance of students in their respective schools. * * *

"Boards of education, rather than courts, are charged with the important and difficult duty of operating the public schools. So, it is not a question of whether this or that individual judge or court considers a given regulation adopted by the board as expedient. The court's duty, regardless of its personal views, is to uphold the board's regulation unless it is generally viewed as being arbitrary and

unreasonable. Any other policy would result in confusion detrimental to the progress and efficiency of our public school system. * * * The decree of the chancellor will be affirmed."

The students denied the right to full participation in school activities were "top-notch boys from the standpoint of their being good students in a school," and their behavior was "above reproach." They were denied educational privileges allowed to other students even though they had not "improperly conducted themselves about the school premises in any way since their marriage" or had "been guilty of any indiscreet language around the school, or in the presence of students, since their marriage."

The reasons advanced by the board, endeavoring to justify its action, are not persuasive or convincing. The board refers only to "possible bad influence" and assumes that married students enter "into another society" requiring all of their available time "to provide a proper family life and time spent in co-curricular activities is not conducive to this end."

The question as to reasonableness of defendant's exclusion rule is a question of law. See *Tanton* v. *McKenney, supra.*

Denying a married student the right to education, whether a partial denial such as denying the right to participate in extracurricular activities, or a complete denial such as expulsion or suspension, was not a reasonable exercise of authority by a school board or school officials.

There was no reason for denying plaintiffs the right to participate in extracurricular activities, other than the fact that they had married. The action of the school board was arbitrary and unreasonable.

The order of the lower court should be set aside, and the resolution of the board of education of the Mesick consolidated school district excluding mar-

ried students from co-curricular activities should be declared null and void. No costs, a public question involved.

Carr, Smith, and Edwards, JJ., concurred with Kelly, J.

Kavanagh, J. (*for affirmance*). Plaintiffs herein filed a petition for a writ of mandamus in the circuit court for the county of Wexford to compel defendant board of education of Mesick consolidated school district to allow Ronald Cochrane and David Shively, 2 of the plaintiffs, to play football during the year 1958.

Robert Cochrane and Clare Shively, fathers of the 2 boys, were appointed next friends to appear and act for them in the petition. The petitioners allege they are residents of the Mesick consolidated school district; that Ronald Cochrane and David Shively, being of lawful age to marry, did contract lawful marriages during the 1958 summer school holidays; and that prior to contracting the marriages they had made inquiry of the superintendent of defendant school district and the athletic director of said school district as to whether marriage by said students would interfere with or in any way limit the education of said students or their participation in sports or other school sponsored activities. The petitioning students allege they were given assurance there would be no limitation.

Petitioning students allege that after their marriages, and on the 28th of August, 1958, the defendant board of education adopted a resolution in substantially the following language:

"Married students attending school shall not be eligible to participate in any co-curricular activities, *i.e.*, competitive sports, band, glee club, class and

club officers, cheer leading, physical education, class plays, and etc."

They allege that said rule is unreasonable, arbitrary, and beyond the power of the defendant.  Petitioners contend that the 2 students wished to participate in school activities and have been denied the right to do so upon the basis of the aforesaid resolution. They seek writ of mandamus commanding the defendant board of education to admit Ronald Cochrane and David Shively to all school sponsored activities for which said students may be otherwise competent and scholastically eligible.

An answer was filed by the defendant board of education denying that its rule or policy was unreasonable or arbitrary and beyond its powers in the administration and conduct of Mesick consolidated school district.  Defendant further alleges that a public meeting was held by the board of education for the purpose of hearing objections, if any, to the proposed rule or policy.  Defendant further contends that petitioners attended said meeting and argued that while the rule or policy was a good and proper rule, and within the power and authority of the board of education to adopt, petitioners did not think it fair to students Ronald Cochrane and David Shively since they had been given assurance that any rule adopted would not apply to them.

A lengthy trial was held before the circuit judge. After the trial the attorney general of the State of Michigan petitioned to intervene under his general statutory powers,[1] and asked for the right to file a brief in the matter.  This he was permitted to do. Subsequently, the trial judge rendered an opinion holding that the granting of a writ of mandamus is a discretionary matter and that it will be granted only when a clear legal right exists and where the

---

[1] CL 1948, § 14.101 (Stat Ann 1952 Rev § 3.211).

one against whom it is sought has a clear legal duty to perform. The lengthy, very well-reasoned opinion refused to grant the writ, stating that the legislature had given local school boards the authority to make rules and regulations with reference to the operation of local schools and that the regulation was not unreasonable and arbitrary.

Application for leave to appeal was made by plaintiffs and the attorney general. Leave was granted. No brief has been filed by the plaintiffs, unquestionably because the boys graduated in June, 1959, and the question is moot so far as they are concerned. If the writ were to issue, plaintiff students certainly would not be interested in coming back to school and graduate over again. The school board could not be compelled to permit plaintiff students to participate in school and athletic activities—they are no longer in school.

The only relief that could be granted by this Court at this time would be to render an advisory opinion. This, in substance, is what we are being asked to do by the attorney general. This Court was not constituted for that purpose. Mr. Justice Edwards said, in *People* v. *Gonzales,* 349 Mich 572, 573:

"There is no constitutional authority for this Court to render advisory opinions."

The matter being presented is one that calls for the use of our appellate jurisdiction. No justiciable issue is framed or presented by the parties involved. The time of this Court can better be allotted to the determination of justiciable issues. Insufficient time exists for us to handle the heavy burden that is imposed upon this Court by its proper work load without having to decide moot questions.

The United States' supreme court, in the case of *Local No. 8-6 Oil, Chemical and Atomic Workers*

*International Union, AFL-CIO,* v. *Missouri,* 361 US 363 (80 S Ct 391, 4 L ed 2d 373), stated (pp 367, 368):

"Because that injunction has long since 'expired by its own terms,' we cannot escape the conclusion that there remain for this court no 'actual matters in controversy essential to the decision of the particular case before it.' *United States* v. *Alaska S. S. Co.,* 253 US 113, 116 (40 S Ct 448, 64 L ed 808). Whatever the practice in the courts of Missouri, the duty of this court 'is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' * * * To express an opinion upon the merits of the appellants' contentions would be to ignore this basic limitation upon the duty and function of the court, and to disregard principles of judicial administration long established and repeatedly followed."

The court concluded by saying (p 371):

"The decision we are asked to review upheld only the validity of an injunction, an injunction that expired by its own terms more than 3 years ago. Any judgment of ours at this late date 'would be wholly ineffectual for want of a subject matter on which it could operate. An affirmance would ostensibly require something to be done which had already taken place. A reversal would ostensibly avoid an event which had already passed beyond recall. One would be as vain as the other. To adjudicate a cause which no longer exists is a proceeding which this court uniformly has declined to entertain.' "

On May 16, 1960, the United States supreme court in *Parker* v. *Ellis,* 362 US 574 (80 S Ct 909, 4 L ed 2d 963), dealing with an application for writ of habeas corpus, said:

"Before the case could come to be heard here, the petitioner was released from the State prison after having served his full sentence with time off for good behavior. The case has thus become moot and the court is without jurisdiction to deal with the merits of petitioner's claim."

While it is true that certain questions of State-wide or Nation-wide importance have been held by both this Court and the United States supreme court to be the subject for proper decision, even though the question may have become moot so far as granting the relief prayed for is concerned, this is not a case of that type. As pointed out by Mr. Justice VOELKER in *LaBello* v. *Victory Pattern Shop, Inc.,* 351 Mich 598, 605:

"Our courts do not lack for genuine adversary litigation and we at least try not to do an idle thing. * * * As was said in *Stern* v. *Stern,* 327 Mich 531, 534, quoting from an earlier case: 'To review a moot question would be a purposeless proceeding. We have repeatedly refused to hear such matters.' See, also, 8 Callaghan's Michigan Pleading and Practice, § 57.04. In such situations, while we may do so we are not obliged even to prepare a written opinion."

Justiciable issue can be framed at any time on this question whenever and wherever it may arise, since each case must of necessity take into consideration all local conditions in determining whether or not it is arbitrary and unreasonable. The appeal thereon should be disposed of, solely on the ground of moot-ness, by denial of the appeal itself. However, since some members of the Court feel that the order of the lower court should be set aside, we shall discuss the controlling question in the case, that is, was the regulation and rule of the local school board unrea-sonable, arbitrary, and discriminatory and, there-fore, void.

An examination of the entire record discloses this background of facts that bear on the question of the reasonableness of the order. Defendant school district operates a 12-grade school, all in the same building, in the village of Mesick, which village had a population, according to the 1950 census, of 359. A member of the school board testified that the board was interested in the protection of the other students, who numbered about 400. Fourteen students married just prior to the adoption of the rule. Only 3 boys returned to school; 2 of those were the plaintiffs, Ronald Cochrane and David Shively. Following these marriages the school board discussed a possible rule which would have prohibited married students from attending school. The matter was then continued to a subsequent meeting, and the rule here in question was adopted.

It is admitted that local school boards are authorized to make rules and regulations under section 614 of the school code (CLS 1956, § 340.614 [Stat Ann 1959 Rev § 15.3614]), which provides:

"Every board shall have authority to make reasonable rules and regulations relative to anything whatever necessary for the proper establishment, maintenance, management and carrying on of the public schools of such district, including regulations relative to the conduct of pupils concerning their safety while in attendance at school or en route to and from school."

The sole question we have is not whether the board of education of a large metropolitan school composed of thousands of students, most of whom are unknown to the others attending the school, might reasonably provide by rule that married students shall not have the opportunity to participate in extracurricular activities, but rather, in a rural community, where a 12-grade school located in one

building, and consisting of approximately 400 students, has had 14 students marry in the space of a few weeks, and only 3 of the 14 return to school, whether there is presented such a factual situation that a local school board might provide some penalties to deter other students from marrying and to encourage young people to complete their high school educations. This Court has said several times in the last few years that it has no desire to be, and will not act as, a superzoning board. *Brae Burn, Inc.,* v. *Bloomfield Hills,* 350 Mich 425, 430. It has further indicated that it will not substitute its judgment for that of an administrative agency in determining whether such agency has made a correct decision when it is based upon competent evidentiary facts. Why, then, should this Court be asked to supplant the local school board's decision and judgment, which it has been authorized by the legislature to exercise in the interest of promoting education?

Under the facts and circumstances as presented in this case, can we say, as a matter of law, that such a rule under the circumstances in such a community was unreasonable and arbitrary? We think not. The court of civil appeals of Texas, in the case of *Kissick* v. *Garland Independent School District* (Tex Civ App), 330 SW2d 708, in a similar situation thought likewise. In that case we had identical facts with our present problem. Kissick married. He was barred from further participation in athletic activities by a regulation of the school. An injunction was sought to restrain the enforcement by the school district of the resolution on the ground that it was discriminatory, unreasonable, and unconstitutional in that, among other things, it was given retroactive effect. It was admitted that physical education was a required course of the school; the playing of football being sufficient to obtain credit for that compulsory course. It was further admitted that the resolution

was passed, in the main, to discourage juvenile marriages among students, the school system not having separate facilities for accommodation of married students.

Points of appeal in *Kissick* involved the following questions of law: That the resolution in question was (1) void as arbitrary, capricious, discriminatory, and unreasonable; (2) violative of public policy in that it penalizes marriage; (3) violative of the Fourteenth Amendment to the Constitution of the United States and the corresponding provisions of the State constitution because it denies equal protection of the laws; (4) unconstitutional as a denial of due process; (5) unconstitutional because retroactive in its effect on appellant since he was married prior to its passage. The Texas court said (pp 710–712):

"Generally relevant to the regulation under attack are the following constitutional and statutory references: that in Texas scholastic age is over 6 and under 18 at beginning of the school year. Article 2902, Vernon's Ann Civ St; 37–B Tex Jur, p 404. Children over 18 years of age and under 21 (also under 6 years) are not free school students as a matter of right, but may be admitted to benefits of public school on such terms as the trustees may deem proper and just, but not otherwise. Article 2904, VACS; 37 Tex Jur, p 404. Article 7, § 1, State constitution [1876] provides: 'A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people it shall be the duty of the legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools.'

"2780 VACS, states in part: 'Said trustees shall adopt such rules, regulations and bylaws as they may deem proper; and the public free schools of such independent district shall be under their con-

trol; and they shall have the exclusive power to manage and govern said schools.'

"With regard to authority of school trustees, it is uniformly held that 'the courts will not interfere in such matters unless a clear abuse of power and discretion is made to appear'. 3–B Tex Jur, pp 414, 415. We shall reserve a discussion of appellant's first point (the resolution as arbitrary, unreasonable, et cetera) until later in this opinion.

"Appellant asserts that such resolution is violative of public policy in that it penalizes persons because of marriage. Consistent with limitations and requirements of State statutes, both civil and criminal, the point is overruled. Article 4603, VACS, provides that 'males under 16 and females under 14 years of age shall not marry'. Article 404, Vernon's Ann Penal Code, makes it a criminal offense for the county clerk to issue a marriage license to males under 21 or females under 18 without consent of parents or guardian, or in lieu thereof the county judge, under penalty of a $1,000 fine. Article 4605, VACS, places similar restrictions on issuance of a marriage license to males under 21 and females under 18. And in the summer of 1959 our legislature evidenced its concern over the problem of 'teen-age' marriages by amending Article 4605. Issuance of license to marry was prohibited to such underage applicants except 'upon the consent and authority *expressly given* by the parent or guardian of such underage applicant *in the presence of the authority issuing such license*', * * * (emphasis ours); also requiring that application therefor be on file in the county clerk's office for not less than 3 days prior thereto.

"As appellant states, it is indeed the policy of the law to look with favor upon marriage and to seek in all lawful ways to uphold this most important of social institutions; every intendment being in favor of matrimony. *Gress* v. *Gress* (Tex Civ App), 209 SW2d 1003. The principle however is referable to those of lawful age (male 21, female 18). On the

other hand, the legislative policy is otherwise insofar as an underage marriage is concerned; it being clearly manifest that by the cited statutes a public policy is announced unfavorable to and in outright discouragement of 'underage applicants' for matrimony.

"In points 3 and 4 appellant cites constitutional provisions, both State and Federal, with which, he says, the regulation is in conflict. Sufficient grounds for overruling same may be found in the principles underlying the disposition of *Board of Trustees of University of Mississippi* v. *Waugh,* 105 Miss 623 (62 So 827, LRA1915D, 588, Ann Cas 1916E, 522); *Waugh* v. *Board of Trustees of University of Mississippi,* 237 US 589 (35 S Ct 720, 59 L ed 1131), and *Wilson* v. *Abilene Independent School District* (Tex Civ App), 190 SW2d 406, involving, generally, the exclusion of fraternity and sorority houses. We will simply refer to the extensive discussions in these cases for conclusions adverse to the propositions here contended for. Incidentally, in *Wilson's* appeal, *supra,* the resolution adopted by Abilene school district applied to students who had belonged to fraternities prior to its adoption.

"But appellant points out that the object prohibited in above cited cases related solely to extra-curricular activities; whereas the instant situation involves a compulsory school course (physical education)—the playing of football satisfying that requirement. Obviously, in the case of Jerry Kissick, Jr., his eligibility for the team was contingent upon physical condition and scholastic grades as determined by the governing athletic authority. And with especial reference to point 5 (retroactive law) the question here posed is of whether the playing of football, coupled with an athletic scholarship potential, is such a scholastic right as entitles one to protection of article 1, § 16, State constitution (1876). 'A statute cannot be said to be retroactive law prohibited by the constitution unless it can be shown that the application of the law would take away or

impair vested rights acquired under existing law'. *McCain* v. *Yost,* 155 Tex 174, 178 (284 SW2d 898, 900). Manifestly, the thing here contended for amounts to no such right. It must be classed as contingent or expectant in contrast to a vested right which is an *immediate fixed right* of present or future enjoyment. 9 Tex Jur p 528. Apart from these considerations Jerry Kissick, Jr., had a constitutional right to attend the Garland school and take part in its functions subject to such reasonable rules and regulations as might be adopted by the school board from time to time.

"We now recur to the first and controlling issue of law raised by appellant; of whether the resolution was 'arbitrary, capricious, discriminatory, unreasonable, and void'. Undoubtedly it had a direct relationship to objectives sought to be accomplished by school authorities—that of discouraging the marriage of 'teen-age' students. A similar problem was faced by the school in *State, ex rel. Thompson,* v. *Marion County Board of Education,* 202 Tenn 29 (302 SW2d 57). There the board had passed a resolution to the effect that any student who married during the school term should be automatically expelled 'for the remainder of the current term'. If the marriage took place during vacation, such student should not be allowed to attend school 'during the term next succeeding'. Under said order, the married student could resume attendance at any later full term. In upholding this regulation as not amounting to an abuse of discretion the Tennessee supreme court [p 34] made the following observation, with which we agree: 'Boards of education, rather than courts, are charged with the important and difficult duty of operating the public schools. So, it is not a question of whether this or that individual judge or court considers a given regulation adopted by the board as expedient. The court's duty, regardless of its personal views, is to uphold the board's regulation unless it is generally viewed as being arbitrary and unreasonable. Any other policy

would result in confusion detrimental to the progress and efficiency of our public school system.'

"All points of appeal upon consideration are over-ruled and judgment of the trial court affirmed."

Any other decision would result in confusion detrimental to the progress and efficiency of our public school system. No school could be operated and no citizen could be expected to serve on a local school board if he were to be "second-guessed" by the courts of this State, without regard to the local circumstances. To establish a rule applicable to all circumstances and to all factual situations, as this Court is being asked to do, would destroy our educational system rather than improve it.

What were the reasons given by the local school board in arriving at the decision to adopt such a rule? In addition to the reasons given in the formal resolution,[2] Mrs. Sprague, president of the school board, in reply to a question as to some of the reasons the board had adopted this policy, said:

"Well, we adopted the policy because of a possible bad influence on the unmarried students at that age when they were not in a formal classroom and in direct supervision of an instructor. Also, in these co-curricular activities they oftentimes get to a position where they are more or less of a hero and the others—particularly the younger students—might think that, or be influenced to think that, the thing to do was to get married. Also, that they themselves

[2] "1. Adopted for the possible bad influence when married students are forced to be closely associated with their unmarried peers in any way other than the more formal circumstances, that is, classrooms, under the immediate supervision of a teacher.

"2. Students today are more ready to accept the actions of their peers as the thing to do. If any married students are in a position of idolization, the more desirous is the group to mimic.

"3. It is felt that married students need all the extra time available to provide a proper family life, and time spent in co-curricular activities is not conducive to this end.

"4. When a student enters into marriage he assumes adulthood and consequently enters into another society, removed from the less mature students and also removed from parental guidance."

had entered, more or less, into responsibilities of adulthood; that they needed, maybe, extra time, whether they were a man or woman, for their responsibility as a homemaker and their scholastic work as well. Then one of the main points, I think, is that our students are minors and under their parents' guidance, and when they enter into a position of marriage they are more or less their own boss, which could cause problems. Now, it's been stated here that they are mingled with other children, which they are in this particular respect: In the classroom seniors are pretty much with seniors, juniors with juniors, and so on down, but in the band they can be any grade in high school, and on occasions even junior high, on certain projects."

Mr. Howard Weston, a member of the school board, testified as follows:

"*Q.* Can you tell the court the occasion for the subject coming up before your board? What led you to consider and adopt this policy?

"*A.* Well, there was—it came to our attention that this was going to corre about, and at one meeting it came up in a discussion in which it was brought out that the children shouldn't even be allowed to attend school. After lengthy discussion it was tabled until the next meeting. At the next meeting we agreed that all children should be allowed a high school education, if at all possible. So then the motion was made and passed as read.

"*Q.* And that motion as passed was the board's attempt to draw a line of distinguishment between the high school education, as such, and these cocurricular activities?

"*A.* Well, we were under the impression that when you get married you enter into another phase of life, and it was mainly we were looking out for the protection of the other students, which number about 400. We weren't doing anything that would harm—we didn't feel that we were doing anything that would harm the basic education of the students involved.

"*Q.* And what other reasons were considered in your discussion on the motion?

"*A.* I don't believe I get what you mean there.

"*Q.* Well, you say that one reason was you felt that the youngsters entered the more mature state of adulthood when they became married and should not mingle with equality with the younger children. Now, that was one reason.

"*A.* Well, you understand that we did this mainly to discourage child marriage. It would be beyond me to encourage, in any way, child marriage.

"*Q.* And that was the point that you expressed in your written statement, that the younger children tended to mimic the ones who were heroes, and so on?

"*A.* I would have—I would be led to believe that that would be true, where students are allowed to carry on all the activities of others, that your lower grade students would have a tendency to follow.

"*Q.* So your board felt that for the good of the school there should be a discouraging factor there— a factor that would discourage these marriages?

"*A.* Certainly.

"*Q.* And you tried to draw a line so it wouldn't interfere with their getting a high school education?

"*A.* We felt we did everything possible to give them their education, and this was just a matter of discouraging others to follow."

Mr. Raymond C. Kahler, the superintendent of schools at Mesick, testified in response to a question by the attorney for plaintiffs, as follows:

"*Q.* Let me ask you this. Has it been your experience, in the course of your educational career, that many students who married dropped out of school?

"*A.* I would say the bulk of them that have married have dropped out of school, to my knowledge."

Mandamus is not a matter of right, but rather one of grace (*Industrial Bank of Wyandotte* v. *Reichert*, 251 Mich 396) and of discretion (*Burgess* v. *Jackson Circuit Judge*, 249 Mich 558), which will not lie to

compel a public officer to perform a duty dependent upon disputed and doubtful facts (*Miller* v. *City of Detroit,* 250 Mich 633), yet "the writ of mandamus is designed to enforce a plain, positive duty, upon the relation of one who has a clear legal right to have it performed, and where there is no other adequate legal remedy." *State* v. *New Haven & Northampton Co.,* 45 Conn 331, 343.

In *Miller* v. *City of Detroit,* 250 Mich 633,.636, the Supreme Court said what has been considered the proper rule, "the writ of mandamus being a discretionary one, its issuance should not be directed unless there is a clear legal duty upon the part of defendant, and a clear legal right in plaintiff to the discharge of that duty."

In *Toan* v. *McGinn,* 271 Mich 28, the Supreme Court said (p 34):

"The applicable rules are clear. To support mandamus, plaintiffs must have a clear legal right to performance of the specific duty sought to be compelled; defendants must have the clear legal duty to perform such act; and it must be a ministerial act, one 'where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.' 38 CJ, Mandamus, § 72, p 598. See, also, *Globe Indemnity Co.* v. *Richer,* 264 Mich 224; *Sezor* v. *Proctor & Gamble Soap Co.,* 267 Mich 128."

In *Nelson* v. *County of Wayne,* 289 Mich 284, the Court said (p 300):

"It is a basic principle of law that in mandamus proceedings, no court has the right to substitute its own discretion for the discretion of the duly elected (or appointed) officers."

Also, in *Veldman* v. *City of Grand Rapids,* 275 Mich 100, the Court said (p 111):

"So long as the power to govern the city and control its affairs is vested by the people in local municipal officers in pursuance of law, neither this Court nor any other may assume to dictate the local governmental policy of the municipality. The power and authority is vested in the commission to govern as its discretion dictates so long as its action is not contrary to law or opposed to sound public policy. So long as the city commission acts within the limits prescribed by law, the Court may not interfere with its discretion."

In the case at bar the testimony is that the matter of marriage among the high school students was a matter of concern with the school board and teachers. The opinion was that such marriages were not good for the general morale of the school; that in fact they were detrimental to the general school discipline. Therefore, as stated in 47 Am Jur, pp 325, 326, being section 44 under Schools, "every presumption is in favor of the proper exercise of power when its object is reasonably germane to the purposes of the grant."

CLS 1956, § 340.578 (Stat Ann 1959 Rev § 15.3578), provides:

"Every board shall have the general care and custody of the schools and property of the district and make and enforce suitable rules and regulations for the general management of the schools and the preservation of the property of the district."

It necessarily follows that those in charge of said school must be allowed to judge and to determine the propriety of allowing married students to participate in the playing of football on the high school team. It is manifest that those in charge of the schools, and not the courts, are better qualified to determine when and under what circumstances a student may be allowed to play football under the banner of the high school team. Plaintiff students

were not prevented from obtaining an education. They were merely denied the right to play on the high school football team. The Indiana supreme court in *State, ex rel. Indiana High School Athletic Assn., v. Lawrence Circuit Court,* 240 Ind — (162 NE2d 250, 254), points out a distinction between interscholastic athletics and the physical training contemplated by State statute. Physical training is a course of training for all of the pupils of a school and not for a select few. It may, but does not necessarily, include football and certainly not interscholastic games. Football contests between schools are extracurricular in nature. The right to provide such activities is clearly recognized. Constitutional provisions and statutes giving the right to receive education and physical training cannot properly be said to include interscholastic sports as a necessary requirement of education.

Taking into consideration all the local circumstances; the great length to which the school board went to determine what it should do to prevent additional child marriages and to prevent the destruction of the morale of the school; the care with which it preserved the right of these plaintiff students to obtain a high school education; the apparent consideration that was given to stop early marriages which cause children to quit school before they had a high school education; it appears that this board of education acted reasonably and within the powers conferred upon it by the legislature. The presumption is always in favor of the reasonableness and propriety of a rule or regulation duly made. No clear abuse has been shown when all facts and circumstances are considered, such as size and type of community, size of school, number of student marriages, number of students dropping out of school attributed to marriage, and the resulting effect on other stu-

dents. It was within the power of defendant school board to adopt the rule in question.

My Brother has relied solely on cases which dismissed married students from school to support his position that the writ should issue. We do not have that situation here, but, as in *Kissick* v. *Garland Independent School District, supra,* a reasonable attempt to preserve high school education in this community.

The order denying the petition for writ of mandamus is affirmed. Since only public agencies are now involved in this case, no costs are allowed.

DETHMERS, C. J., and BLACK, J., concurred with KAVANAGH, J.

SOURIS, J. (*for affirmance*). I concur in the result reached by Mr. Justice KAVANAGH, but only on the ground that the question presented is moot.