Richard NIGOSIAN, individually and John Szewc, individually and as President of the Gibralter Federation of Teachers for and on behalf of all persons members of the bargaining unit employed by the Gibralter School District, similarly situated, Plaintiffs,

v.

Frank WEISS et al., Defendants.

Civ. A. No. 32430.

United States District Court,
E. D. Michigan, S. D.

Sept. 3, 1971.

Mark H. Cousens, Craig, Fieger & Golden, Detroit, Mich., for plaintiffs.

John E. MacDonald, Tinkham, Snyder, MacDonald & Wilder, Wayne, Mich., for defendants.

## MEMORANDUM OPINION

FEIKENS, District Judge.

Richard Nigosian brings this action against the defendant Frank Weiss and others, members of the Board of Education of the Gibralter School District, alleging violations of 42 U.S.C. § 1983,[1] known as the Civil Rights Act.

Plaintiff Nigosian was a one-year probationary teacher hired by the Gibralter School District for the school year 1968–1969, a year in which the school district and teachers were involved in extensive labor difficulties. During this dispute, the school district, in an attempt to insulate its school children from possible detrimental effects of this labor dispute, issued "Administrative Memorandum #8," which reads in part:

> "There shall be no classroom discussion of any aspect of the recent labor dispute in the District without the express permission of the principal concerned."

Shortly after the issuance of the memorandum, plaintiff Nigosian was suspended, as he alleges, for violation of the memorandum in that he allowed students to discuss the strike in his classroom. Defendants deny that this was the basis for his suspension, alleging rather that it was for general incompetence and insubordination.

It is not necessary to resolve this evidentiary question, in that before the court is a motion to dismiss for failure to state a claim upon which relief can be granted; and consequently all plaintiff's allegations will be taken as true. F.R.C.P. 12(b) (6), Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965).

I

The teachers' union filed a complaint before the Michigan State Labor Mediation Board concerning the basic labor dispute and an unfair labor practice charge for the suspension (later firing) of Nigosian. The trial examiner with respect to Nigosian construed the administrative memorandum as within Michigan law and further that this did not violate the Constitution of the United States. There was thus no unfair labor practice. No appeal was taken from the trial examiner's discussion; it was therefore affirmed by the State Labor Mediation Board. (Michigan Employment Relations Commission, Case C69AA5, filed April 2, 1970).

Defendants here urge that this decision of the administrative agency, rendered after this complaint was filed, is res judicata before this court. While an administrative agency may, when appropriate, be accorded res judicata effect in the federal courts, United States v. Utah Construction & Mining, 384 U.S. 394, 421–422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) (dicta), it is still necessary to determine if this case falls within the category of those cases appropriately left to agency resolution. Taylor v. New York City Transit Authority, 309 F. Supp. 785, 790–793 (E.D.N.Y.1970), aff'd, 433 F.2d 665 (2nd Cir. 1970).

In Dewey v. Reynolds Metals Company, 429 F.2d 324 (6th Cir. 1970), aff'd, 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (equally divided court), and Spann

---

1. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

v. Kaywood Division, Joanna Lumber Mills, 446 F.2d 120 (6th Cir. 1971), the court dismissed actions against private employers which had previously been submitted to arbitration. Both actions were based upon a finding of the Equal Employment Opportunity Commission that there was reasonable cause to believe that the defendant employers had engaged in unlawful discrimination. In *Dewey*, the plaintiff complained of religious discrimination, in *Spann*, racial discrimination. Both actions were filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The court specifically stated in *Dewey:*

> "The question in our case is not whether arbitration and resort to the courts could be maintained at the same time; rather our case involves the question whether suit may be brought in court *after* the grievance has been finally adjudicated by arbitration." *Id.* 429 F.2d at 332.

In the instant case, plaintiff Nigosian filed the complaint before this court and the grievance before the State Labor Mediation Board nearly contemporaneously. So that this court's jurisdiction was sought not merely to correct action before another body that plaintiff thought erroneous. It is in all respects an independent action.

Further, in *Dewey* and *Spann*, the court relied on the collective bargaining agreement between the employee and employer that requiried grievances to be submitted to arbitration. Court cognizance of the cause, it was felt, would completely destroy the benefit of such a contract clause.

The public employee is in an entirely different position than one in the private sector. He is limited as to proper subjects of bargaining and by laws against striking. M.C.L.A. § 423.202. Often, a public employee's recourse lies only with the courts. There is a strong federal policy in bringing actions under 42 U.S. C. § 1983, the Civil Rights Act, before the federal courts. It would be improper to accord a determination of the State Labor Mediation Board res judicata ef-fect where the examiner specifically limited his decision to examination of state, not federal, law.

## II

Under M.C.L.A. § 340.614, the Gibralter School Board is empowered:

> "to make reasonable rules and regulations relative to anything whatever necessary for the proper establishment, maintenance, management and carrying on of the public schools of such district, including regulations relative to the conduct of pupils concerning their safety while in attendance at school or enroute to and from school."

Plaintiff Nigosian claims that Administrative Memorandum #8 promulgated by the Gibralter School Board violated his constitutional rights in that it denied him the exercise of his rights of free speech and association guaranteed to him by the Fourteenth Amendment.

■ It is clear from the language of M.C.L.A. § 340.614 that the Board may properly regulate the activities of its pupils and teachers within the classroom and on the school premsises during the school day. The conduct for which plaintiff Nigosian was dismissed was properly the subject of regulation by the Board under this statutory authorization. The question that is presented by this motion to dismiss is whether the decision of the Board to eliminate discussion of the labor dispute between the teachers and the Board in the classroom violated the plaintiff Nigosian's First Amendment right to freedom of speech and association.

■ The memorandum was adopted by the Board in order to insulate the students of the school district from the acrimony of a bitter labor dispute between the Board and its teaching staff. The dispute had already precipitated a strike, and several lawsuits, and resulted in a loss of school time for the children of the district. The Board could reasonably conclude:

(1) That the discussion of the bitterly fought strike would make no construc-

tive contribution to the program of instruction conducted in the school system;

(2) That it would be proper to insulate school children entrusted to its care from unnecessary involvement in the emotionally explosive and destructive labor dispute; and

(3) That the teaching staff of the school district should refrain from discussion of subjects not germane to the program of instruction necessary to the education of their students unless properly authorized.

The relationship that exists among the Board, its teaching staff, and the students is a critical factor in this controversy. Under M.C.L.A. § 340.731, and the Constitution of the State of Michigan (Art. VIII, Sec. 2), parents of school-age children are required to entrust them to the care of the Board for the purpose of providing them with educational instruction. The plaintiff is employed by the Board in order to carry out its obligation to provide an education for its students.

■■■ There is a grave responsibility on the part of the Board and its agents to carry out this constitutional mandate in good faith and not to abuse this trust in order to forward personal and partisan ends. The Board is under an obligation to keep the public school classroom free from disruptive influences. Vought v. Van Buren Public Schools, 306 F. Supp. 1388 (E.D.Mich.1969). (A School Board may promulgate rules concerning the extent to which and the conditions under which obscene materials may or may not be properly on the school premises.) Cianci v. Board of Education of City School District of Rye, 18 A.D.2d 930, 238 N.Y.S.2d 547 (App.Div.1963). (There is a duty on the school board to provide safe premises for school children.) See also, Restatement Second, Torts, Section 430. School teachers, no less than the Board, are under the same obligation to refrain from abusing their

authority and using the public school classroom as a forum for personal views unrelated to the school curriculum.

It is clear from the case of Tinker v. Des Moines Independent School District, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969), that

"First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students. It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."

The *Tinker* decision recognized the principle that there may be limits placed upon the right of free speech in the peculiar circumstances of the public school classroom. The Supreme Court, however, has rejected the assumption [shared by the plaintiff in the instant case] "that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please." Adderley v. Florida, 385 U.S. 39, 48, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966).

■ The compulsory education law has provided plaintiff Nigosian with a captive audience of young, malleable fifth graders. The memorandum merely prohibits teachers, students or others from using the public school classroom without proper authorization as a forum for discussion of a subject that had divided the community and made little contribution to the educational development of the students. That Nigosian had other means available to him to express his views and to discuss the labor dispute was made clear in Pickering v. Board of Education, 391 U.S. 563, 88 S. Ct. 1731, 20 L.Ed.2d 811 (1968). The Court in *Pickering* found that it was improper for a school board to fire a teacher for making inaccurate statements in a letter to the local newspaper critical of the school board's practices. It is noteworthy that the Court emphasized the absence of any detrimental ef-

fect of the teacher's statements upon the proper performance of his duties:

"What we do have before us is a case in which a teacher has made erroneous public statements upon issues then currently the subject of public attention, which are critical of his ultimate employer but which are neither shown nor can be presumed to have in any way either impeded the teacher's proper performance of his daily duties in the classroom or to have interfered with the regular operation of the schools generally." 391 U.S. at 572, 573, 88 S.Ct. at 1737.

Nigosian's activity could clearly have a detrimental effect upon the school children. For that reason, the memorandum was not improper and plaintiff Nigosian's constitutional rights have not been infringed. The findings of fact and conclusions of law stated herein are made pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. An appropriate order may be presented.