WARREN EDUCATION ASSOCIATION v ADAMS

OPINION OF THE COURT

1. SCHOOLS AND SCHOOL DISTRICTS—LABOR RELATIONS—TEACHERS— STRIKES—STATUTES.

Withholding of services by teachers in an effort to cause a school board to reinstate the provisions of an expired contract is a strike within the meaning of the public employment relations act (MCLA 423.201).

2. SCHOOLS AND SCHOOL DISTRICTS—LABOR RELATIONS—SCHOOL BOARD —REGULATIONS.

A school board may adopt reasonable regulations regarding its relations with its teachers, but the board may not promulgate unconscionable regulations and then seek an injunction to terminate a teacher strike.

3. EQUITY—INJUNCTION—INEQUITABLE RESULTS.

A court may not grant injunctive relief which would create an inequitable result.

4. SCHOOLS AND SCHOOL DISTRICTS—STATUTES—LABOR RELATIONS— STRIKES—INJUNCTION—IRREPARABLE INJURY.

An injunction restraining teachers from continuing their strike was properly granted where the strike was contrary to statute, and the trial court found that a continuation of the work stoppage would cause irreparable injury (MCLA 423.202).

CONCURRENCE BY BRONSON, P. J.

5. SCHOOLS AND SCHOOL DISTRICTS—LABOR RELATIONS—TEACHERS— STRIKES—STATUTES.

*A withholding of services by teachers to force a school board to*

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 48 Am Jur 2d, Labor and Labor Relations §§ 246, 1194–1197, 1361, 1368.

[2, 6] 48 Am Jur 2d, Labor and Labor Relations §§ 1197, 1407, 1471.

[3, 4] 42 Am Jur 2d, Injunctions §§ 325, 326.

48 Am Jur 2d, Labor and Labor Relations § 1402 *et seq.*

[7] 48 Am Jur 2d, Labor and Labor Relations § 1288.

*extend the expiration date of an old contract is the type of strike proscribed by the public employment relations act (MCLA 423.202).*

6. SCHOOLS AND SCHOOL DISTRICTS—STATUTES—SCHOOL BOARDS—REGULATIONS—LABOR RELATIONS—CONTRACT NEGOTIATIONS.

*A statute which grants a school board power to enact regulations regarding the operation of the schools does not give the board power to dictate unilaterally the conditions under which teachers are required to work while negotiations on a contract are in progress (MCLA 340.614).*

7. SCHOOLS AND SCHOOL DISTRICTS—LABOR RELATIONS—TEACHERS—CONTRACT NEGOTIATIONS—CASE LAW.

*Prior case law requires that when a school board and teachers are negotiating a new contract the terms of the old contract shall remain in force pending the negotiation of the new contract to replace the old one.*

Appeal from Macomb, Edward J. Gallagher, J. Submitted Division 2 June 6, 1974, at Detroit. (Docket No. 18859.) Decided January 8, 1975. Leave to appeal applied for.

Complaint by the Warren Education Association against Olin L. Adams, Superintendent of Schools, and Warren Consolidated School District Board of Education for declaratory judgment. Defendants counterclaimed and filed a third-party complaint against James Reilly and Robert Kowalczyk, officers of the association, and the teachers, individually, for an injunction and damages. Injunction granted. Plaintiff appeals. Affirmed, and remanded for further proceedings.

*Fenton, Nederlander, Dodge, Barris, Gribbs, Ritchie & Crehan, P. C.* (by *Richard A. Witte),* for plaintiff.

*Butzel, Long, Gust, Klein & Van Zile* (by *Robert M. Vercruysse* and *Chester E. Kasiborski, Jr.),* for defendants and third-party plaintiffs.

Before: BRONSON, P. J., and BRENNAN and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. On August 15, 1973 the 1971–1973 contract for the teachers in the Warren Consolidated School District expired by its own terms and was not renewed. In spite of the absence of a contract, the teachers returned to work at the beginning of the fall semester, the school board having refused to extend the old contract past its expiration date. There being no written contract, the school board imposed "interim operating regulations" pursuant to and under the authority of MCLA 340.614; MSA 15.3614. These regulations eliminated a great many of the provisions and protections of the expired contract.

On September 4, 1973, the Warren Education Association authorized a strike to commence October 8, 1973. On October 7, 1973 a strike vote was taken. The ballot was prepared and structured to indicate that the sole purpose of the strike was to seek reinstatement of the provisions of the previous expired contract which had been deleted or modified by the "interim operating regulations". By a vote of 1201 to 37 the members of the association resolved to withhold their services and on the following day the teachers did not appear for work.

When the school board did not take any action with respect to this work stoppage, the association filed an action for declaratory judgment on October 12, 1973. The school board counterclaimed against plaintiff association and, with permission of the trial court, filed a third-party complaint against the teachers individually for injunctive

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

relief and damages. After two days of hearings, the trial court entered an opinion and injunctive order on October 24, 1973 which held that the teachers were engaged in an illegal strike in violation of the public employment relations act as amended, commonly known as the "Hutchinson Act", the same being MCLA 423.201 *et seq.;* MSA 17.455(1) *et seq.* The trial court ordered that the teachers were "therefore ordered back to school forthwith, and shall report for duty at the regular hour on Thursday, October 25, 1973, and will serve pursuant to the terms of the 1971–73 Collective Bargaining Agreement" subject to the court's continuing supervision of the negotiations between the parties. This injunctive order was made final on November 19, 1973 and plaintiff association appealed.

The focal question on appeal, as below, is whether the withholding of services by the teachers in an effort to cause the school board to reinstate the provisions of the expired contract is a "strike" within the meaning of the aforementioned act.

MCLA 423.201; MSA 17.455(1) provides, in part, that:

> "As used in this act a 'strike' means the concerted failure to report for duty, the wilful absence from one's position, the stoppage of work, or the abstinence in whole or in part from the full, faithful and proper performance of the duties of employment, *for the purpose of inducing, influencing or coercing a change in the conditions, or compensation, or the rights, privileges or obligations of employment.* " (Emphasis supplied.)

See also MCLA 423.206; MSA 17.455(6).

Plaintiff association argues here, as they did below, that the work stoppage by the teachers was not a "strike" within the meaning of the act, since it was not for the purpose of coercing "a change in

the conditions" but rather to seek a return to the conditions as they existed under the expired contract. As appealing as the argument may be, the error in the logic of the argument is patent. Since the prior contract expired by its own terms on August 15, 1973, the status quo is not the situation as it existed under the expired contract, but rather the situation in which no contract exists and the interim operating regulations do exist. Since the teachers were seeking a change from the situation as it existed under the interim operating regulations, they were seeking a "change in the conditions" within the meaning of the above quoted statute.

We would hasten to add that the school board may not promulgate unconscionable regulations and seek the solace of an injunction to terminate a teacher strike. Not only does MCLA 340.614, *supra,* mandate that the regulations be reasonable, but also, since injunctive relief is equitable in nature, a court may not decree relief which would create an inequitable result.

The withholding of services by the teachers being a strike within the meaning of MCLA 423.201, *supra,* and strikes by said public employees being contrary to statutory mandate, MCLA 423.202; MSA 17.455(2), the circuit court could issue, upon a showing of violence, irreparable injury or breach of the peace, an injunction restraining the teachers from continuing their strike. *Holland School District v Holland Education Association,* 380 Mich 314; 157 NW2d 206 (1968). Plaintiff association stipulated, and the trial court found, that there would be irreparable injury. While this Court hears appeals from actions in equity *de novo,* we give great weight to the findings of the trial court. Upon review of the

record herein, we hold that the relief granted by the trial court was proper.

Affirmed as to the injunctive relief granted, but remanded for consideration of the remaining issues raised in the counter and cross complaints. No costs, a public question being involved.

V. J. BRENNAN, J., concurred.

BRONSON, P. J. *(concurring)*. I concur in the result reached by my colleagues, but for different reasons.

It is undisputed that the Warren teachers were on strike. The plaintiff education association admitted that at trial. The issue for decision, as I see it, is whether that strike was prohibited by the public employment relations act.

The act, relevant portions of which are set forth in the majority opinion, by its own terms does not prohibit all strikes, but only those "for the purpose of inducing * * * a change in the conditions * * * of employment".

My colleagues have concluded that this strike was illegal because it was for the purpose of changing the conditions of employment. With that conclusion I have no quarrel. However, they maintain that the "change" involved returning to the provisions of the then expired contract, in lieu of "interim operating regulations" which are said to have been validly imposed by the school board to fill the void created by the expiration of the old contract. My view is that the "change" urged by the striking teachers—in a way which is condemned by the statute—was to extend the term of the old contract, during which time negotiations for a new contract would take place.

I believe that support for this view is found in

the facts. The teachers had originally agreed to continue working while negotiations were in progress, in compliance with the mandate of *Holland School District v Holland Education Association,* 380 Mich 314; 157 NW2d 206 (1968). It was only when the school board, unilaterally and without notice to the association, enacted the "interim operating regulations", that the teachers voted to withhold their services. The teachers sought to reinstate the provisions of the expired contract in order to avoid the oppressive provisions of the board's regulations. That purpose—to extend the expiration date of the old contract—was to "induce * * * a change in the conditions" because one of the terms of a contract is its duration. The board was under no obligation to agree to extend the expiration date of the old contract and the withholding of services by the teachers to force that result was the type of strike proscribed by the public employment relations act.

However, I find no warrant in legislation or case law for the "interim operating regulations" created by the board. My colleagues' position is that MCLA 340.614; MSA 15.3614 empowers the board to institute such regulations. That statute provides, in pertinent part:

"Every board shall have authority to make reasonable rules and regulations relative to anything whatever necessary for the proper establishment, maintenance, management and carrying on of the public schools of such district * * * ."

This law gives school boards the power to enact regulations concerning, for example, (1) the disciplining and suspending of students, *Davis v Ann Arbor Public Schools,* 313 F Supp 1217 (ED Mich,

1970), (2) the activities of its pupils and teachers within the classroom and on the school premises during the school day, *Nigosian v Weiss,* 343 F Supp 757 (ED Mich, 1971), (3) the usage of identification cards by students, faculty and staff, *LaPorte v Escanaba Area Public Schools,* 51 Mich App 305; 214 NW2d 840 (1974), and (4) the denial to married high school students of the right to engage in extra curricular activities, *Cochrane v Mesick School District,* 360 Mich 390; 103 NW2d 569 (1960).

The statute does not grant the board a license to dictate unilaterally the terms of the contract under which the teachers are required to work, pursuant to the command of *Holland, supra,* while negotiations are in progress. It is designed to give school boards the authority to regulate the day-to-day operation of the schools, not to provide state-supported bargaining leverage by which teachers are forced by *Holland* to continue working, but on the board's terms.

I read *Holland* to require that the old contract remain in force pending the negotiation of a new one to replace it. Otherwise, the teachers, then working under an expired contract, could not properly be said to be "employees" at all. Had *Holland's* message been heeded by the board in this case, this strike could have been avoided, since *Holland* assures precisely what the teachers sought here: maintenance of the status quo while negotiations continue. Teachers cannot fairly be required to refrain from striking and be subjected to the whim of the school board as a reward for practicing restraint.

It is not enough to say that the interim regulations must be reasonable. A brief look at the regulations imposed by the board in this case and

apparently approved *sub silentio* by my colleagues well illustrates the point.[1]

In view of the trial judge's order, in which he sent the teachers back to work pursuant to the terms of the old contract, I am willing to affirm. But I emphasize my belief that no legislation or case law of which I am aware authorizes a school board to substitute "interim operating regulations" however reasonable,[2] for the terms of the expired contract during the period in which teachers continue to teach and their bargaining representatives negotiate a new collective bargaining agreement. I cannot countenance a situation in which teachers are forced to choose between violating the command of *Holland* and subjecting themselves to the unbridled discretion of the school board with which they are negotiating.

---

[1] The interim operating regulations eliminated the following provisions and protections of the previous expired contract: seniority step increase in salary, additional education or higher degree status level increases in salary, recognition of the association as the exclusive bargaining agent, the association's use of mails and bulletin board, the teachers' right to review their own personnel files, presence of the association's representative at disciplinary hearings, certain teacher protection in the enforcement of discipline, and certain procedural protections for discharge and demotion. The length and definition of the teachers' work day was changed, along with other numerous changes.

[2] I hasten to point out that there is potentially a great deal of difference between the terms included in a set of "reasonable" regulations and those resulting from the give and take of hard-nosed bargaining.