No. 21,049.

PATRICK CREYHON et al., *Plaintiffs*, v. THE BOARD OF EDUCA-
TION OF THE CITY OF PARSONS, *Defendant*.

SYLLABUS BY THE COURT.

1. CITY HIGH SCHOOLS—*Admission of Graduates of Parochial School—
   Examinations.* Where a writ of mandamus is asked to compel a
   board of education to allow graduates of a parochial school to enter
   the city high school without an examination, and the whole contro-
   versy is over the existence of their right in that regard, the time set
   for the examination, and detailed regulations regarding it, are not
   material.

2. SAME—*Parochial School Graduates—May Be Required to Pass Ex-
   amination.* A board of education, under the power granted it to make
   rules for the government of city schools, may require the graduates
   of parochial schools to pass an examination for admission to the
   high school, while admitting graduates of public schools without such
   an examination.

3. SAME. Where such a rule exists, graduates of a parochial school
   can not obtain a right to be admitted to the high school without an
   examination by establishing to the satisfaction of a court that their
   school affords training equal to that of the public schools.

4. SAME—*Admissions of Board of Education—Entitle Parochial Grad-
   uates to Admission to High School.* Where, in an action brought to
   require a board of education to admit to the city high school with-
   out examination graduates of a parochial school, the board admits
   that such applicants have studied the same textbooks and been given
   the same tests and examinations in the same manner and to the same
   extent as the graduates of the public schools who are received with-
   out examination, such admissions justify an order allowing such ap-
   plicants to enter the high school without further examination.

5. SAME—*Construction of Statute.* The controversy referred to is not
   affected by a statute authorizing the graduates of certain public
   schools, upon passing an examination therein provided for, to re-
   ceive diplomas admitting them to any high school in the state.

Original proceeding in mandamus. Opinion filed February
10, 1917. Judgment for the plaintiffs.

*John Madden,* and *C. E. Cooper,* both of Parsons, for the
plaintiffs.

*E. L. Burton,* and *W. D. Atkinson,* both of Parsons, for the
defendant.

The opinion of the court was delivered by

MASON, J.: The parents of several children who had successfully completed the work in the eighth grade of a parochial school in Parsons applied for their admission to the city high school. The board of education refused to admit them without their taking an examination in accordance with its rules. The parents obtained from this court an alterative writ of mandamus requiring such action, unless reason to the contrary should be shown. The board filed an answer in which a part of the allegations of the writ are admitted. The plaintiffs ask for a judgment upon these admissions, and the case has been heard and submitted upon that motion.

1. The rule and practice of the board is to admit to the high school, without examination, applicants having a county superintendent's diploma or a certificate of graduation from the eighth grade of the Parsons city schools, "or any other public school of equal rank," and to require examinations of all other applicants. In August, 1916, notice was given by publication in local newspapers that opportunity for such an examination would be given on September 6, and that applicants were required to furnish certain information by August 28. In the course of the plaintiffs' argument some criticism is made of these details, but no question of their reasonableness is involved in this proceeding. It does not appear that any especial inconvenience would have resulted therefrom, if the applicants had been willing to submit to any examination at all. But however that may be, the court is not asked to require that the applicants be given an opportunity to be examined at another time or under other conditions, but to order their admission without that preliminary, and the manifest purpose of the action is to test their right in that regard.

2. The principal contention of the plaintiffs is that the board has no power to make or enforce a rule which, while allowing the graduates of the city schools, or other public schools of equal rank, to enter the high school at once, denies admission to the graduates of parochial and other private schools of whatever rank until they have passed an examination, thereby arbitrarily discriminating against the pupils of

the private schools, and denying to them and to their parents the equal protection of the law. We can not regard the contention as well founded. That children of suitable age are entitled to attend the public schools at the place of their residence is not doubted, but the department to which they are to be assigned is a matter to be determined under appropriate regulations adopted by the governing body. The board of education is charged with the duty of making rules for the government of the city schools. (Gen. Stat. 1915, § 9108.) It is proper if not absolutely necessary that some provision should be made for determining whether an applicant who presents himself for admission to a particular department has had the preliminary training to justify his assignment thereto. Two obvious methods for accomplishing this result present themselves. One is to test the prospective pupil's actual qualifications by an examination; the other is to act upon the presumption in his favor arising from the character of the schools he has attended. There is room for the exercise of individual judgment as to the manner and extent to which the latter method should be applied. There is a fair basis for the classification of schools in this respect, and making a certificate of graduation from schools of one class a substitute for an examination of a pupil, while denying that effect to such a certificate from schools of another class. For instance, if the board had seen fit to dispense with an examination in the case of graduates of schools in the city, while requiring it of the graduates of outside schools of a similar kind, a just basis for the distinction could be found in the fact that the board could more conveniently determine the quality of work done by a school that was near at hand than by one at a distance. And such a distinction might reasonably be made between the public schools of the city and other schools located therein, because the board of education, having full control of the management of the public schools, would necessarily be fully advised of the character of work they were doing, so that further examination of their graduates would be superfluous. The same character of difference, though of less degree, exists between public and private schools, in whatever part of the state they may be situated. While the board of education of Parsons has no control over public schools outside of the city, its

schools are a part of the same general system, all portions of which are subject to official visitation and regulation. The board has means for investigating and determining the evidential value of a certificate of graduation from a public school anywhere in Kansas that are not available with respect to any school not under public management. The courses of study, the general methods pursued, the establishment of standards, are subject to legal regulation. How far in a particular instance they are conformed to may always be determined by investigation conducted as a matter of right. However efficient a private school may actually be, the board does not have and can not have the same facilities for satisfying itself on the point. Any opportunity afforded it for investigating the question would depend upon courtesy and not upon law—would be a privilege and not a right. And while it might well avail itself of such an opportunity and treat the diploma of such a school as a substitute for an examination if in its judgment the information acquired justified that course, a court can not control its action in that regard.

Reported cases which are cited seem to have but little direct bearing upon the question just considered. For illustration, our attention is called to two decisions, seemingly to the effect that a rule is unreasonable which prescribes the branches a pupil in a public school shall study. (*School Dist. No. 18 Garvin Co. v. Thompson et al.*, 24 Okla. 1; *Trustees of Schools v. The People*, 87 Ill. 303.) It is doubtless competent for the legislature to authorize those in the control of the public schools to regulate that matter, and whether it has done so would seem to be a question of statutory construction. In any event a solution of that problem would throw little light upon that now under discussion.

3. The purpose of the examination of an applicant for admission to the high school is to determine whether he has received sufficient preparatory training to warrant accepting him. But he can not dispense with the occasion for an examination by establishing the existence of that fact to the satisfaction of a court. The determination of the matter is a function of the school authorities, and its correctness, if arrived at by the exercise of their fair and candid judgment,

is not open to judicial review. (*Williams v. Parsons*, 81 Kan. 593, 106 Pac. 36.)

4. However, the general principles already announced are not decisive of this case, by reason of certain admissions made by the defendant. In the answer it is said:

"Defendant for the purpose of this action admits, as averred in said writ, that 'the teachers of said parochial school are holders of public diplomas and certificates entitling them to teach in the public or common schools of the State of Kansas,' and that 'the educational advantages of the pupils in all the grades' of the parochial school 'are equal to those in the public or common schools of the city of Parsons.'

"Defendant admits, as averred in said writ, that 'in said parochial school up to and including the eighth grade the pupils have been classified the same as in the public or common schools of the city of Parsons, the same curriculum has been adopted, the textbooks adopted by the state are used, and that the same tests and examinations are required and made,' but defendant avers, that the said tests and examinations are made by the teachers in said parochial school only.

. . . . . . . . . .

"Defendant admits, as averred in said writ, that 'the plaintiffs herein are the parents of children, to-wit, James Creyhon, Mary Moffat, Frank Tipton and Mary Doherty, pupils who have finished successfully the work in the eighth grade of said Parochial school, have studied the same textbooks, have been given the same tests and examinations, in the same manner and to the same extent as the pupils who have successfully completed the work in the eighth grade of the public or common schools of the City of Parsons,' but defendant avers, that said tests and examinations have been given and made by the teachers of said parochial schools only."

That these admissions were not intended as mere disclaimers of knowledge as to the matters to which they refer is made clear by the difference in the language used with regard to other allegations of the alternative writ. Two other paragraphs of the answer read:

"Defendant avers, it is not informed as to whether, as averred in said writ, that 'upon the completion of the eighth grade in said parochial school the pupils are equal in educational qualifications to the pupils in the public or common schools of the city of Parsons, and are fitted to enter the high school of said city on an equality with the pupils of the public or common schools who have passed through the eighth grade'; but defendant avers that fact should be determined by an examination provided therefor by rule of defendant board, as hereinafter more spe-

cifically stated, or as provided by chapter 271, Laws of Kansas 1913, as amended by chapter 300, Laws of Kansas 1915.

*    *    *    *    *    *    *    *    *    *

"Defendant avers, it is not informed as to whether, as averred in said writ, that 'said pupils are entitled to the same right and stand upon the same equal footing in the way of educational advantages as the pupils who have finished the eighth grade in the public or common schools and are entitled without further examination to be admitted to the high school of said city,' and defendant avers that fact should be determined by an examination therefor, by rule of defendant board, as hereinafter more specifically stated, or as provided by chapter 271, Laws of Kansas 1913, as amended by chapter 300, Laws of Kansas 1915."

In view of the distinction in phraseology noted, the specific admissions must be treated not only. as affirmatively establishing the facts to which they relate, so far as this litigation is concerned, but as indicating that these facts are known to the board as a body. As already stated, an examination of an applicant for admission to the high school is designed to enable the board to determine whether he has received sufficient preparatory training to warrant his acceptance. It is a means to that end, and not an ultimate object in itself. If the fact exists, and the board has definite and official knowledge of it, the purpose of the examination is fulfilled, and the admission of a. pupil to the privileges of the school should not be denied or delayed merely in order that a barren formality may be gone through with. The board formally admits, thereby implying its definite and official knowledge, that the children of the plaintiffs have finished successfully the eighth grade of a school whose teachers are qualified for public-school work, whose educational advantages are equal to those of the public schools, whose pupils are classified in the same manner as in the public schools, and where the same curriculum has been adopted, the same textbooks used, and the same tests and examinations required and made; that these applicants "have been given the same tests and examinations, in the same manner and to the same extent as the pupils who have successfully completed the work in the eighth grade" of the city schools. To say that these pupils have been given the same tests and examinations as those of the public schools fairly means, not merely that substantially the same ques-

tions have been asked of them, but that their answers have been graded according to substantially the same standards. The circumstance that the tests and examinations were made by teachers in the parochial schools, which seems to be relied upon as a basis for a distinction, is therefore without practical effect. An applicant for admission to the high school who presents a certificate of graduation from the eighth grade of the city school is admitted upon the strength of that document, which is simply evidence that he has successfully sustained certain tests and examinations. When it is conclusively established by other evidence that an applicant has successfully sustained exactly the same tests and examinations, the mere fact that the individuals who conducted them were not employed by the public is not a sufficient basis for requiring further proof to the same effect as a basis for official action. It is true that one who has been graduated from the parochial school may in fact not have received sufficient preliminary training to qualify him for entrance to the high school. But the same is true of one who has been graduated from the city school. The tests and examinations are not infallible, by whomsoever made. But where certain tests and examinations are accepted as *prima facie* evidence of qualification if they have been made by the teachers of one school, they ought not to be denied the same effect when made by the teachers of another school. The theory that a discrimination might be warranted by the possibility that the results of the tests might vary in probative force according to the personality of the individuals by whom they were made is precluded by the condition that the tests are the same. As already suggested, if the questions asked were the same but the bases of marking were not, the tests would not be identical or equivalent, but substantially different.

5. The controversy is not affected by the statute referred to in the answer (Gen. Stat. 1915, §§ 9436-9440). That relates to examinations to be given those who have completed the course of study prescribed by the state board of education for rural schools, and the grades in schools having two or more teachers, and provides that such persons upon meeting the requirements of the act shall be given diplomas admitting them to any high school in the state.

For the reasons stated the plaintiffs are adjudged to have

the right to enter their children in the high school without examination, but as the judgment is based upon admissions which were made for the purposes of this proceeding it does not constitute an adjudication that future graduates of the parochial school are entitled to that privilege.