## TANTON *v.* McKENNEY.

1. COLLEGES AND UNIVERSITIES — STATE NORMAL COLLEGE — RE-
FUSAL TO REINSTATE STUDENT—QUESTIONS OPEN TO REVIEW ON
CERTIORARI.

> On certiorari to review an order denying a writ of man-
> damus to compel defendants to reinstate plaintiff as a
> student in a State normal college, the court may examine
> the record to determine whether there is any testimony
> to support the findings, but not to weigh the testimony.

2. SAME—EVIDENCE SUFFICIENT TO SUSTAIN FINDINGS.

> Testimony *held*, sufficient to sustain the findings of the
> court below that plaintiff had been guilty of smoking
> cigarettes on the public streets, that she rode around the
> streets of the city in an automobile seated on the lap of
> a young man and that she was guilty of other acts of in-
> discretion.

3. SAME—EVIDENCE—ADMISSIBILITY—SMOKING.

> Testimony offered on behalf of plaintiff tending to show
> that some of the male students and professors at the
> University smoked, *held*, properly rejected, since the rules
> of discipline at the University might be entirely inap-
> propriate for an institution having as students 1,400 girls
> of tender years.

4. SAME — SCHOOL OFFICERS HAVE INHERENT POWER TO MAINTAIN
DISCIPLINE—DISCRETION.

> The managing officers of the public schools of this State
> have the inherent power to maintain such discipline as
> will effectuate the purposes of the institution, and, in the
> absence of abuse of discretion, their action will not be
> interfered with by the courts.

5. SAME—RECORD SHOWS NO ARBITRARY ACTION OR ABUSE OF DIS-
CRETION.

> The contention of plaintiff's counsel that she was ex-
> pelled without a hearing, *held*, not supported by the record,
> which established the contrary, and that there was no

On discretion of school authorities in excluding, expelling, or
suspending pupils for misconduct of themselves or parents, see
notes in 41 L. R. A. 593; 50 L. R. A. (N. S.) 267.

On power of school authorities over pupils while outside of
school grounds, see note in 3 L. R. A. (N. S.) 496.

abuse of discretion, or arbitrary action on the part of defendants.

Certiorari to Washtenaw; Sample (George W.), J. Submitted January 8, 1924. (Calendar No. 30,801.) Decided March 5, 1924.

Mandamus by Alice Tanton, an infant, by her next friend, to compel Charles McKenney, president of the Michigan State Normal College, and another to reinstate plaintiff in said school. From an order denying the writ, plaintiff brings certiorari. Affirmed.

*Walter M. Nelson* and *Harry L. Diehl* (*William E. Henze, John D. Lynch,* and *Frank Ruddy,* of counsel), for appellant.

*Andrew B. Dougherty,* Attorney General, and *O. L. Smith,* Assistant Attorney General, for appellees.

FELLOWS, J. The plaintiff, Alice Tanton, a young lady 18 years old, attended the Michigan State Normal College at Ypsilanti during the fall term 1921 and the winter term 1922. She was refused readmission for the spring term 1922. The refusal was based on an investigation of plaintiff's conduct made by defendant Bessie Leach Priddy, dean of women of the institution, and was approved by the president, defendant Charles McKenney. Before taking such action Mrs. Priddy called plaintiff in, fully apprised her of the information which had come to her as dean of women, and gave her ample opportunity to explain her conduct. Shortly thereafter plaintiff instituted mandamus proceedings in the Washtenaw circuit court to compel her reinstatement. Issues were framed and a trial had at which considerable testimony was taken. The trial judge found the facts to be with the defendants; that plaintiff had become addicted to the smoking of cigarettes before coming to the institution and continued their use there; that

she smoked cigarettes on the public streets of Ypsilanti; that she rode around the streets of Ypsilanti in an automobile seated on the lap of a young man and was guilty of other acts of indiscretion; and that she aired her grievances and her defiance of disciplinary measures in the public press which tended to prevent her return to the institution and the maintenance of discipline there.    He found as matter of law that defendants had acted within their power and that there had been no abuse of discretion, and denied the writ. This action is here reviewed on certiorari.

We may on certiorari examine the record to determine whether there is any testimony to support the findings but not to weigh such testimony.    An examination of the record before us discloses an abundance of testimony to sustain the findings in the instant case.    Indeed plaintiff's own testimony sustains them although she seeks to minimize her acts.

Preliminary to the consideration of the main questions plaintiff's counsel insists that there was error in the rejection of certain testimony offered by him.    He apparently sought to show that some of the male students and professors at the University smoked. This testimony was rejected by the trial judge and correctly rejected.    The rules of discipline at the University might be entirely inappropriate for an institution having as students over 1,400 girls of tender years.    This brings us to the meritorious questions of whether defendants have the power here exercised and whether there has been an abuse of such power.

As is well known, the Michigan State Normal College is maintained at the expense of the taxpayers to prepare teachers for our public schools.    The student body is made up almost entirely of young women who have chosen teaching as their profession. They are required to sign a "declaration of intention" couched in the following language:

"We, the subscribers, do hereby declare that it is our intention to devote ourselves to the business of teaching in the schools of this State, and that our sole object in resorting to this normal school is the better to prepare ourselves for the discharge of this important duty."

Inherently the managing officers have the power to maintain such discipline as will effectuate the purposes of the institution. Their powers are somewhat analogous to the powers of school boards in our country schools and boards of education in our cities. In the consideration of their powers we must also bear in mind that the students at our normal schools are being fitted for a profession requiring the highest standard of personal conduct. The right to attend our public schools is beyond question. That such right is tempered by, and subject to, proper regulations in the furtherance of discipline is likewise beyond question. That in the absence of an abuse of discretion the school authorities and not the courts shall prescribe proper disciplinary measures is, we think, settled by the text-writers and the adjudicated cases.

A few excerpts from the article on "Schools" in Ruling Case Law will be helpful in determining the rule to be adopted. We quote the following:

"There is no necessity that all the rules, orders and regulations for the discipline, government and management of the schools shall be made a matter of record by the school board, or that every act, order or direction affecting the conduct of such schools shall be authorized or confirmed by a formal vote. It is recognized that no system of rules however carefully prepared can provide for every emergency, or meet every requirement. In consequence, much must necessarily be left to the individual members of the school boards, and to the superintendents of and the teachers in the several schools. It follows that any reasonable rule adopted by a superintendent, or a teacher merely, not inconsistent with some statute or

some other rule prescribed by higher authority, is binding on the pupils." 24 R. C. L. p. 574.

"Control by Courts. The courts will not interfere with the exercise of discretion by school directors in matters confided by law to their judgment, unless there is a clear abuse of the discretion, or a violation of law. So the courts are usually disinclined to interfere with regulations adopted by school boards, and they will not consider whether the regulations are wise or expedient, but merely whether they are a reasonable exercise of the power and discretion of the board. Acting reasonably within the powers conferred, it is the province of the board of education to determine what things are detrimental to the successful management, good order, and discipline of the schools and the rules required to produce these conditions. The presumption is always in favor of the reasonableness and propriety of a rule or regulation duly made. The reasonableness of regulations is a question of law for the courts." 24 R. C. L. p. 575.

"Suspension or Expulsion by Directors. The enjoyment of the right of attending the public schools is necessarily conditioned on compliance by pupils with the reasonable rules, regulations, and requirements of the school authorities, breaches of which may be punished by suspension or expulsion. Ordinarily the school authorities have the right to define the offenses for which the punishment of exclusion from school may be imposed, and to determine whether the offense has been committed, the limitation on this authority being that it must in both respects be reasonably exercised. The power of expulsion given to the directors is not limited to cases of infraction of such rules as they may have theretofore adopted, but extends to cases where they may have become satisfied that the interests of the school require the expulsion of a pupil on account of his gross misbehavior, and the discretion vested in school authorities in this respect is very broad, but they will not be permitted to be arbitrary. In the school, as in the family, there exists on the part of the pupils the obligation of obedience to lawful commands, subordination and civil deportment, respect for the rights of others, and fidelity to duty. These obligations are inherent in any proper school system,

and constitute, so to speak, the common law of the school.    Every pupil is presumed to know this law, and is subject to it, whether it has or has not been re-enacted by the district board in the form of written rules and regulations."    24 R. C. L. p. 646.

In *State, ex rel. Dresser*, v. *District Board*, 135 Wis. 619 (116 N. W. 232, 16 L. R. A. [N. S.] 730, 128 Am. St. Rep. 1050), it was said:

"It is clear, therefore, that a rule might have been adopted by the school authorities to meet the situation here presented.    This court in the quotation already made from the opinion in the *Burpee Case* recognizes certain obligations on the part of the pupil which are inherent in any proper school system, and which constitute the common law of the school, and which may be enforced without the adoption in advance of any rules upon the subject.

"This court therefore holds that the school authorities have the power to suspend a pupil for an offense committed outside of school hours and not in the presence of the teacher which has a direct and immediate tendency to influence the conduct of other pupils while in the school room, to set at naught the proper discipline of the school, to impair the authority of the teachers, and to bring them into ridicule and contempt.    Such power is essential to the preservation of order, decency, decorum, and good government in the public schools."

And in *Wilson* v. *Board of Education*, 233 Ill. 464 (84 N. E. 697, 15 L. R. A. [N. S.] 1136, 13 Ann. Cas. 330), it was said:

"The power of the board of education to control and manage the schools and to adopt rules and regulations necessary for that purpose is ample and full.    The rules and by-laws necessary to a proper conduct and management of the schools are, and must necessarily be, left to the discretion of the board, and its acts will not be interfered with nor set aside by the courts unless there is a clear abuse of the power and discretion conferred.    Acting reasonably within the powers conferred, it is the province of the board of

education to determine what things are detrimental to the successful management, good order and discipline of the schools and the rules required to produce these conditions."

*Pugsley* v. *Sellmeyer*, 158 Ark. 247 (250 S. W. 538), cited by plaintiff's counsel on another point, is to the same effect.   In that case the petitioner had been expelled for violating a rule against the use of cosmetics.   In denying the writ of mandamus to compel her reinstatement it was said:

"The question, therefore, is not whether we approve this rule as one we would have made as directors of the district, nor are we required to find whether it was essential to the maintenance of discipline.   On the contrary, we must uphold the rule unless we find that the directors have clearly abused their discretion, and that the rule is not one reasonably calculated to effect the purpose intended, that is, of promoting discipline in the school; and we do not so find.   *   *   *

"Courts have other and more important functions to perform than that of hearing the complaints of disaffected pupils of the public schools against rules and regulations promulgated by the school boards for the government of the schools.   The courts have this right of review, for the reasonableness of such rule is a judicial question, and the courts will not refuse to perform their functions in determining the reasonableness of such rules, when the question is presented. But, in doing so, it will be kept in mind that the directors are elected by the patrons of the schools over which they preside, and the election occurs annually. These directors are in close and intimate touch with the affairs of their respective districts, and know the conditions with which they have to deal.   It will be remembered also that respect for constituted authority and obedience thereto is an essential lesson to qualify one for the duties of citizenship, and that the schoolroom is an appropriate place to teach that lesson; so that the courts hesitate to substitute their will and judgment for that of the school boards which are delegated by law as the agencies to prescribe rules for the government of the public schools of the State, which are supported at the public expense."

In the recent case of *Finch* v. *School District*, 225 Mich. 674, this court having before it the finality of the decision of the school board finding the teacher guilty of gross immorality, speaking through the present Chief Justice, said:

"The school board, a deliberative public body in the exercise of a right, here reserved by contract, went to a hearing, *quasi*-judicial in character, and, having grounds to sustain its finding, found that plaintiff had been guilty of gross immorality and dismissed him. Surely, the school district may not be required to accept the finding of a jury upon this question rather than the finding of its school board. If such finding by the school board may be reviewed and reversed by a jury, the government of our schools may be impaired and the position of school boards in dealing with such cases will be precarious indeed. Such finding and determination of the board are conclusive unless the board acted corruptly, in bad faith, or in clear abuse of its powers."

See, also, *Covington Board of Education* v. *Booth,* 110 Ky. 807 (62 S. W. 872, 53 L. R. A. 787) ; *Hysong* v. *School District,* 164 Pa. St. 629 (30 Atl. 482, 26 L. R. A. 203, 44 Am. St. Rep. 632) ; *O'Connor* v. *Hendrick,* 184 N. Y. 421 (77 N. E. 612, 7 L. R. A. [N. S.] 402, 6 Ann. Cas. 432) ; *State, ex rel. Andrew,* v. *Webber,* 108 Ind. 31 (8 N. E. 708, 58 Am. Rep. 30) ; *Kinzer* v. *School District,* 129 Iowa, 441 (105 N. W. 686, 3 L. R. A. [N. S.] 496, 6 Ann. Cas. 996) ; *Creyhon* v. *Board of Education,* 99 Kan. 824 (163 Pac. 145, L. R. A. 1917C, 993) ; *McCormick* v. *Burt,* 95 Ill. 263 (35 Am. Rep. 163).

The contention of plaintiff's counsel that she was expelled without a hearing is not supported by the record, which established the contrary. Upon the question of how formal the hearing must be, see *Vermillion* v. *State,* 78 Neb. 107, 110 (110 N. W. 736, 15 Ann. Cas. 401).

This record affirmatively establishes as found by

the trial judge that there has been no abuse of discretion, no arbitrary action on the part of the defendants or either of them. The dean of women, Mrs. Priddy, who primarily had the matter in charge, showed every consideration for this plaintiff and displayed a motherly interest in her. She urged upon plaintiff's older sister the imperative necessity of getting plaintiff out of the rut she was traveling in and proffered her assistance and aid. Instead of accepting, plaintiff after consulting her older sister proceeded to air her defiance of discipline in the public press. This of itself was sufficient grounds for refusing her readmission. *Wayland* v. *Hughes*, 43 Wash. 441 (86 Pac. 642, 7 L. R. A. [N. S.] 352). Instead of condemning Mrs. Priddy she should be commended for upholding some old-fashioned ideals of young womanhood.

The writ of certiorari will be dismissed and the judgment of the circuit court of Washtenaw county denying the writ of mandamus will be affirmed.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.