IN THE MATTER OF ANNE ROYAL CARTER.

(Filed 10 July 1964.)

**1. Injunctions § 13—**

Upon the hearing of an order to show cause, a court may not grant relief entirely distinct from that specifically asked by movant.

**2. Same; Colleges and Universities—**

Where, after remand of a cause involving the suspension of a student at the University of North Carolina, an order to show cause why the record should not be returned to the Superior Court is issued on allegation that the administrative agencies had misinterpreted the order of remand and were not proceeding in accordance therewith, the only question before the court is whether the cause should be returned to the court or not, and all adjudications in the order outside the scope of this inquiry must be stricken on appeal.

**3. Colleges and Universities—**

Under the Constitution and statutes of this State, the management of the University of North Carolina is delegated to and invested in the Board of Trustees, and the Board of Trustees may make all necessary and proper and reasonable rules and regulations for the orderly management and government of the University of North Carolina and for the preservation of discipline of its students. Constitution of North Carolina Art. IX, § 6; G.S. 116-1; G.S. 116-3; G.S. 116-4; G.S. 116-10; G.S. 116-11.

**4. Same; Administrative Law § 4—**

*Certiorari* lies to review an order of the Board of Trustees of the University of North Carolina affirming the suspension of a student from the University for cheating, since the Board of Trustees is not an agency in the legislative or judicial branches of the government, nor an agency governed by G.S. Ch. 150, and therefore no other statutory provision exists for review of its actions. G.S. 143-307.

**5. Colleges and Universities—**

It would seem that the Board of Trustees of the University of North Carolina and its Executive Committee has authority under the Constitution of North Carolina and applicable statutes to delegate to the faculty and administrative officers of the University and to the student government organized under a written constitution a limited authority to act in mat-

ters pertaining to student discipline so long as the Board retains final jurisdiction.

**6. Same— Order held to remand cause for further proceedings and not to entitle student to summary exoneration.**

When, upon review of an order of the Trustees of the University of North Carolina affirming the suspension of a student for cheating, the judge of the Superior Court recites that all of the evidence failed to rebut the presumption of innocence in favor of the student and that her conviction was therefore not in accordance with due process and that to deny her readmission on the evidence would be arbitrary and capricious, but the order does not reverse the decision of the Board of Trustees but remands the cause for further specific proceedings, and no appeal is taken from the order, *held* the remand is authorized by G.S. 143-315 and the order is not a final determination of the rights of the parties and does not entitle the student to summary exoneration from the charge of cheating by the administrative authorities of the University, but remands the cause for further proceedings by the administrative authorities.

APPEAL by petitioner Anne Royal Carter from an order in chambers by *Williams, J.,* signed 1 November 1963, and filed 18 November 1963. WAKE.

In stating the facts Anne Royal Carter will hereafter be referred to as petitioner; the Board of Trustees of the University of North Carolina as respondent; the Women's Honor Council of the Women's Council of Student Government of the University of North Carolina as Honor Council; and the Faculty Committee on Student Discipline of the University of North Carolina as Faculty Committee.

Petitioner was a student at the University of North Carolina. On 20 May 1961 she was served with a summons to appear on 22 May 1961 before the Honor Council on a charge that on 17 May 1961 she had violated the Honor Code, in that she had cheated on a Latin I make-up quiz by not taking the make-up quiz specifically made out for her. The summons served on her stated in part:

"Article II, Section 4(c) of the Constitution provides:

"1. The presumption of innocence until guilt is proved.

"2. You have the right to due notice and fair hearing. You will NOT be tried within 72 hours of the date of the service of this summons unless you inform the person serving this summons that you desire earlier trial.

"3. You may have the privilege of assistance by a member of the Council if you desire such aid. You should indicate your desire for counsel to the server of this summons. The privilege of assistance by a member of the Council will be deemed waived if not

exercised by you prior to the trial. Any Council member serving in this capacity is automatically disqualified from voting on your case.

"4.　You have the right to face your accuser.

"5.　You have a right to summon witnesses through the Council."

On 22 May 1961 the Honor Council found her guilty as charged, and its sentence was suspension from the University of North Carolina.

The following appears from respondent's minutes, special session of the Executive Committee, Governor's Office, 15 April 1957:

" '(President Friday) recommended that the following amendment be made to the Code of the University:

" 'Among the duties of the faculty and Chancellor in each of the component institutions of the University of North Carolina shall be included the duty to exercise full and final authority in the regulation of student conduct and in matters of student discipline in that institution; and in the discharge of this duty, delegation of such authority may be made to established agencies of student government and to administrative or other officers of the institution in such manner and to such extent as may by the faculty and Chancellor be deemed necessary and expedient; provided, that in the discharge of this duty it shall be the duty of the faculty and Chancellor to secure to every student the right of due process and fair hearing, the presumption of innocence until found guilty, the right to know the evidence and to face witnesses testifying against him, and the right to such advice and assistance in his own defense as may be allowable under the regulations of the institution as approved by the Faculty and Chancellor. In those instances where the denial of any of these procedural rights is alleged it shall be the duty of the President to review the proceedings.'

"(This recommendation was approved by the Executive Committee.)"

On 22 May 1961 petitioner wrote a letter to Dr. William B. Aycock, Chancellor of the University of North Carolina, protesting her innocence, and requesting a review of her case to the end that a mistake of the Honor Council be corrected. On 29 May 1961 Dr. Aycock wrote her a letter stating in substance that her appeal for a review had been denied, which meant he could find no reason to place her case in the hands of the Faculty Committee for a new hearing; and that since

there is some indication she desired to pursue the matter further, an appeal from his decision not to grant another hearing should be made to his superior, Dr. William C. Friday, President of the University of North Carolina.

Petitioner appealed from Dr. Aycock's decision to Dr. William C. Friday, President of the University of North Carolina. Dr. Friday affirmed Dr. Aycock's decision, on the ground that upon a review of petitioner's appeal he saw no denial of due process.

Petitioner then appealed to the Executive Committee of respondent from Dr. Friday's decision. On 10 July 1961 the Executive Committee affirmed the decision of the Honor Council, the decision of Dr. Aycock, and the decision of Dr. Friday.

From the decision of the Executive Committee, petitioner appealed to respondent's full Board meeting on 26 February 1962. At this meeting respondent's full Board passed a resolution appointing a Special Committee of the Board of Trustees and directing it "to make a thorough investigation of this entire matter and hear all interested parties and make its report and recommendations to the full Board of Trustees at its next meeting."

The report of the Special Committee to respondent's full Board appears in the record on pages 71 through 82, both inclusive. This report shows that the Special Committee conceived its duty was to examine the procedures and machinery in disciplinary matters at the University of North Carolina, and to determine whether or not procedure had been followed in petitioner's case which insured her a fair hearing and due process in arriving at the determination that petitioner was guilty of the offense with which she was charged. The Special Committee, after stating in substance in its report that there had been no denial of due process or fairness in the handling of petitioner's case, used this language:

> "We feel, therefore, after making a full and complete investigation of this matter and hearing all interested parties, that the Board of Trustees should take no action; that the question of the readmission of Miss Carter to the University at Chapel Hill should be left where it has been placed by the Trustees and where it properly belongs — with the Chancellor and faculty at Chapel Hill."

On 28 May 1962 respondent's full Board adopted the report of its Special Committee.

On 2 June 1962 petitioner filed with the clerk of the superior court of Orange County an application for a writ of *certiorari*. On 7 June

1962 petitioner filed with the clerk of the superior court of Wake County a petition for Judicial Review of a Final Administrative Decision of the Board of Trustees of the University of North Carolina, pursuant to Article 33, Chapter 143, of the General Statutes of North Carolina. Respondent filed an answer to petitioner's application and petition.

By consent of petitioner's counsel and of respondent's counsel, the Attorney General of North Carolina, petitioner's application for a writ of *certiorari* and her petition for Judicial Review were consolidated for hearing before Judge Heman R. Clark, presiding over 17 September 1962 Term of Wake County superior court. On 21 September 1962 Judge Clark entered an order stating in effect that he had jurisdiction to review the decision of respondent's Board as petitioned for, and that he should order further hearings of evidence to properly review the proceedings. Whereupon, he ordered that the hearing be continued to 5 November 1962 in the Wake County superior court. To this order no exception was noted.

The hearing set for 5 November 1962 was continued to 15 November 1962. Judge Clark had a *de novo* hearing. He heard the testimony of Dr. William B. Aycock; the sworn testimony of John S. Catlin, an instructor in Latin at the University of North Carolina, who gave petitioner the make-up quiz and made the accusation against her; the testimony of Dr. Albert I. Suskin, head of the Latin Department of the University of North Carolina; the testimony of petitioner; and the unsworn testimony of Priscilla Wyrick, Chairman of the Women's Honor Council of the University of North Carolina, and of Tony Thompson, clerk, who wrote up the trial of the Honor Council. Counsel for petitioner was present and participated in the hearing, as well as Ralph Moody, a Deputy Attorney General of North Carolina.

Judge Clark entered an order in the hearing on 28 December 1962. His order states near its beginning "that petitioner challenged the legality of the decision of the Board on two grounds:

"(1)   That the Trustees could not lawfully delegate final authority in matters of suspension of students properly enrolled in the University and therefore recognition of suspension of a student council is unconstitutional.

"(2)   That in this case there was no competent, material and substantial evidence to support a finding that the petitioner was guilty of the charge of cheating, and therefore the Board of Trustees acted arbitrarily in approving the decision of the council suspending her from the University on these grounds."

Judge Clark in his order, after stating the legal powers vested in respondent's Board of Trustees, and the amendment made to the Code of the University on 15 April 1957, which is set forth in full above, concluded "that the petitioner's contention that the decision of the Board was an unconstitutional delegation of authority is without merit in her case."

Then Judge Clark in his order, after reviewing the evidence given before him, concluded "that all of the evidence offered against Miss Carter fails to rebut the presumption of innocence. * * * To deny her readmission solely on grounds of the suspension for cheating on the evidence in this case would, in the opinion of this Court, be arbitrary and capricious."

Then his order concludes as follows:

"Following the hearing in this Court, the Chancellor, through the Assistant Attorney General representing the Trustees, suggested that this case be remanded for further consideration in view of the evidence not known on review. This procedure appears entirely appropriate.

"NOW, THEREFORE, this cause is remanded to the Board of Trustees of the University of North Carolina and the Board is directed to refer the matter to the proper administrative authority for a review of the proceeding, including the additional evidence disclosed in this Court and for such other and further administrative action as is appropriate."

No exception was taken by any party to this order, and no appeal by any party from this order was made.

On 3 June 1963 petitioner made a motion before Judge Clawson L. Williams, presiding over Wake County superior court, that an order be issued to the Board of Trustees of the University of North Carolina to show cause why the record in this proceeding should not be returned to the court, and an order issued, pursuant to G.S. 143-315, reversing the Women's Honor Council and the suspension of petitioner from the University, and directing the correction of the University records accordingly, and that such other appropriate action should be taken by the court in the premises. On the same date Judge Williams issued an order for the Board of Trustees of the University of North Carolina to appear before him in the Wake County superior court on 18 June 1963, and show cause, if any it has, why petitioner's motion, which is set forth in the show cause order, should not be allowed.

On 14 June 1963 the parties in this proceeding entered a stipulation to the effect that the hearing of the show cause order should be con-

tinued to 27 June 1963, and in the event that the matter could not be heard by Judge Williams on that date, then it may be heard by Judge Williams, in or out of chambers, out of term, out of the county and out of the district, at such place and time as it may be heard by Judge Williams and as agreed by the parties through their counsel.

The hearing was held by Judge Williams on 26 July 1963 in chambers at Sanford, North Carolina, when and where petitioner was represented by her counsel, and respondent was represented by Ralph Moody, a Deputy Attorney General of North Carolina. The hearing was on the record, motion, order to show cause, answer to motion, reply to the answer, and argument of counsel. Judge Williams entered an order in the hearing on 1 November 1963, which was filed on 18 November 1963. Judge Williams' order, after reciting that part of Judge Clark's order of 28 December 1962 wherein it is stated "this cause is remanded to the Board of Trustees of the University of North Carolina and the Board is directed to refer the matter to the proper administrative authority for a review of the proceeding, including the additional evidence disclosed in this Court and for such other and further administrative action as is appropriate," goes on to state:

> "* * * pursuant to said order of Judge Clark the Board of Trustees of the University of North Carolina by resolution referred this proceeding to the Chancellor of the University of North Carolina at Chapel Hill for appropriate action and said Chancellor referred this proceeding to the Faculty Committee on Student Discipline for the purpose of carrying out the order of Judge Clark; that the Chairman of the Faculty Committee on Student Discipline, Professor James R. Caldwell, notified the petitioner on May 29, 1963, that said Committee would hold a *de novo* hearing in this matter and that additional evidence would be taken in the proceeding with other information as to the membership of the said Committee and the status of counsel * * *."

After these recitals Judge Williams' order decrees as follows, in substance:

One. The suspension of petitioner from the University by the Honor Council is stayed, unless and until the same shall be restored upon the final termination of this proceeding.

Two. This entire matter shall be heard *de novo* by the Faculty Committee on Student Discipline of the University, which shall make findings of fact and conclusions as to whether petitioner's suspension from the University should be sustained, or whether her suspension is

not supported by substantial evidence or for other valid reasons should be vacated.

Three. In the conduct of the hearing by the Faculty Committee on Student Discipline, it shall use, review and incorporate in its hearing the entire record in the hearing before Judge Clark. In addition, it shall hear all other relevant evidence offered by petitioner and respondent. Petitioner and respondent shall be entitled to counsel, and petitioner shall have the right to subpoena and cross-examine any witnesses that have heretofore testified in this proceeding.

Four. No member of the student body and no designated officers of Student Government of the University of North Carolina at Chapel Hill shall sit with or as members of the Faculty Committee on Student Discipline during the hearing. The Faculty Committee on Student Discipline in the conduct of the hearing shall not be limited by the technical rules of a court of law, but the hearing shall be conducted in a manner to protect basic constitutional rights of petitioner under the laws and constitution of Student Government and according to basic principles of due process of law.

Five. The Faculty Committee on Student Discipline shall make a full report and record of its hearing, its findings of fact, its conclusions and determination, and file it in the office of the clerk of the superior court of Wake County for such other and further proceedings as may be deemed appropriate by the court and in accordance with law. Within 30 days after the filing of the report, either party may file objections and exceptions to it.

Six. Until petitioner exhausts the available hearing before the Faculty Committee on Student Discipline, the court holds as a matter of law that petitioner has not exhausted her administrative remedies.

Seven. Petitioner's motion and order to show cause heretofore issued in this proceeding is dismissed.

From this order of Judge Williams, petitioner appeals to the Supreme Court.

*John T. Manning for petitioner appellant.*
*Attorney General T. W. Bruton and Deputy Attorney General Ralph Moody for respondent appellee.*

PARKER, J. Petitioner assigns as error Judge Williams' order, in that it is broader than the show cause order, and includes "a re-examination of questions and issues of fact and law on which Judge Clark's order was based, and it modifies, reverses, and sets aside in part the

lawful final order of Judge Clark, duly entered on December 28, 1962, and to which latter order neither petitioner nor respondent objected, excepted, or appealed."

Petitioner further assigns as error Judge Williams' order, in that it did not grant her the relief she sought in her motion and the show cause order based thereon.

The only question before Judge Williams at the hearing on the show cause order was for respondent to appear before him and show cause, if it can, "why the record in this matter should not be returned to the court, and an order, pursuant to G.S. 143-315, be issued by the court reversing the Women's Honor Council and the suspension of the petitioner, Anne Royal Carter, and directing the correction of the University records accordingly and such other and further action as may be taken by the court in the premises." *Williamson v. High Point,* 214 N.C. 693, 200 S.E. 388; *Carroll v. Board of Trade,* 259 N.C. 692, 131 S.E. 2d 483; *Boyd v. Louisville & Jefferson County Planning and Zoning Comm.,* 313 Ky. 196, 230 S.W. 2d 444; 60 C.J.S., Motions and Orders, §§ 20, 39(b), 53; 37 Am. Jur., Motions, Rules and Orders, § 38.

Petitioner's motion for a show cause order asks for specific relief and that other appropriate relief should be taken by the court in the premises, and the show cause order commands respondent to appear before him and show cause, if it can, why the specific relief therein set forth should not be granted, "and such other and further action as may be taken by the court in the premises." The words in the show cause order for respondent to show cause, if it can, why general relief should not be granted do not mean that Judge Williams was empowered by the show cause order to grant movant, if she prevailed, every possible relief, but only such as is necessarily incidental to, and not entirely distinct from, that specifically asked. *Williamson v. High Point, supra; Carroll v. Board of Trade, supra;* 60 C.J.S., Motions and Orders, § 39(b).

Petitioner in her brief uses language to this effect, except when quoted: Judge Williams' order should be vacated, and respondent "should be directed to comply with the provisions of the Judgment or Order of Judge Clark on December 28, 1962," in that "it dismissed the charge against the petitioner appellant as invalid, found that the evidence did not overcome her presumption of innocence, [and] directed that she be exonerated from the charge of cheating by proper ADMINISTRATIVE AUTHORITIES."

The real and sole question before Judge Williams on the hearing of his show cause order was whether Judge Clark's order of 28 December

1962 found petitioner not guilty and directed that she be exonerated from the charge of cheating by proper administrative authorities of the University of North Carolina at Chapel Hill, and if so, whether he should enter an order enforcing such a construction of Judge Clark's order. All of Judge Williams' order, other than his dismissal of petitioner's motion and the order to show cause, which we will discuss later, is broader than his order to show cause, grants relief not allied to, and entirely distinct from, that specifically asked by movant, is erroneously incorporated in his order, and is ordered stricken from his order. Therefore, its correctness or incorrectness is not before us for determination.

The Attorney General in his brief raises the grave question as to whether Judge Clark had any jurisdiction under Art. 33, Ch. 143, of the General Statutes of North Carolina, "Judicial Review of Decisions of Certain Administrative Agencies," the statute on which he based his authority for decision. It is hornbook law that if the superior court acts without jurisdiction, on appeal the Supreme Court acquires no jurisdiction, and will *ex mero motu* dismiss the case or proceeding. *Shepard v. Leonard*, 223 N.C. 110, 25 S.E. 2d 445.

G.S. 143-307 provides:

"Any person who is aggrieved by a final administrative decision, and who has exhausted all administrative remedies made available to him by statute or agency rule, is entitled to judicial review of such decision under this article, unless adequate procedure for judicial review is provided by some other statute, in which case the review shall be under such other statute. Nothing in this chapter shall prevent any person from invoking any judicial remedy available to him under the law to test the validity of any administrative action not made reviewable under this article."

G.S. 143-306 is as follows:

"DEFINITIONS. — As used in this article the terms

(1) 'Administrative Agency' or 'agency' shall mean any State officer, committee, authority, board, bureau, commission or department authorized by law to make administrative decisions, except those agencies in the legislative or judicial branches of government, and except those whose procedures are governed by chapter 150 of the General Statutes, or whose administrative decisions are made subject to judicial review under some other statute or statutes containing adequate procedural provisions therefor.

(2) 'Administrative decision' or 'decision' shall mean any decision, order, or determination rendered by an administrative agency in a proceeding in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an opportunity for agency hearing."

Article IX, § 6, of the North Carolina Constitution provides:

"The General Assembly shall have power to provide for the election of trustees of the University of North Carolina, in whom, when chosen, shall be vested all the privileges, rights, franchises and endowments thereof in anywise granted to or conferred upon the trustees of said University; and the General Assembly may make such provisions, laws, and regulations from time to time, as may be necessary and expedient for the maintenance and management of said University."

The General Assembly repeated this constitutional provision *ipsissimis verbis* in G.S. 116-1. G.S. 116-3 provides: "The trustees of the University shall be a body politic and corporate, to be known and distinguished by the name of the 'University of North Carolina,' and by that name shall have perpetual succession and a common seal * * *." This statute then states in detail the powers vested in the Trustees of the University, among which is the ability to sue and be sued in all courts whatsoever. G.S. 116-4 provides for the election of 100 Trustees of the University of North Carolina by the General Assembly. G.S. 116-10 provides: "The trustees shall have power to make such rules and regulations for the management of the University as they may deem necessary and expedient, not inconsistent with the constitution and laws of the State." G.S. 116-11 provides: "The trustees shall have power to appoint from their own number an executive committee which shall be clothed with such powers as the trustees may confer."

Under the constitution and statutes of this State, the management of the University of North Carolina is delegated to and vested in its Board of Trustees. Consequently, the Board of Trustees of the University of North Carolina may make all necessary and proper and reasonable rules and regulations for the orderly management and government of the University of North Carolina entrusted to its care and for the preservation of discipline of students therein in accordance with the rules and regulations made. *Gott v. Berea College*, 156 Ky. 376, 161 S.W. 204, 51 L.R.A. (N.S.) 17; *Tanton v. McKenney*, 226 Mich. 245, 197 N.W. 510, 33 A.L.R. 1175; *Board of Trustees of University of Mississippi v. Waugh*, 105 Miss. 623, 62 So. 827, L.R.A. 1915D 588,

Ann. Cas. 1916E 522 (This case was appealed to the Supreme Court of the United States, and the opinion of the Supreme Court of Mississippi was affirmed. 237 U.S. 589, 59 L. Ed. 1131); *McGinnis v. Walker,* Ohio App., 40 N.E. 2d 488; *Foley v. Benedict,* 122 Tex. 193, 55 S.W. 2d 805, 86 A.L.R. 477; 55 Am. Jur., Universities and Colleges, § 19; 14 C.J.S., Colleges and Universities, § 26.

We have set forth above in the statement of facts and delegation of authority by the Executive Committee of the Board of Trustees of the University of North Carolina to the faculty and Chancellor in each of the component institutions of said University to perform "the duty to exercise full and final authority in the regulation of student conduct and in matters of student discipline in that institution; and in the discharge of this duty, delegation of such authority may be made to established agencies of student government and to administrative or other officers of the institution in such manner and to such extent as may by the faculty and Chancellor be deemed necessary and expedient; provided, that in the discharge of this duty it shall be the duty of the faculty and Chancellor to secure to every student the right of due process and fair hearing, the presumption of innocence until found guilty, the right to know the evidence and to face witnesses testifying against him, and the right to such advice and assistance in his own defense as may be allowable under the regulations of the institution as approved by the Faculty and Chancellor."

Dr. William B. Aycock, Chancellor of the University of North Carolina at Chapel Hill, testified as a witness before Judge Clark in the hearing on 15 November 1962. It would seem from his testimony that the faculty and Chancellor of the University of North Carolina at Chapel Hill delegated authority in writing to establish agencies of student government there in respect to student conduct and matters of student discipline, and that there is a written student constitution of the University of North Carolina at Chapel Hill. These written instruments were offered in evidence before Judge Clark, but are not set forth in the record. We are fortified in our opinion by the following stipulation made by the parties:

> "It shall not be necessary to print as a part of the record on appeal the minutes and resolutions of the Board of Trustees of the University of North Carolina at Chapel Hill, or of the Executive Committee thereof, delegating limited authority to the faculty and administrative officers of the University of North Carolina at Chapel Hill to act in all matters and procedures pertaining to student discipline, so long as it retains final jurisdiction, nor shall it be necessary to print any regulations or procedures of said

administrative officials nor the provisions of the Student Constitution pertaining to student government or student discipline; it is stipulated and agreed that cheating on an examination or quiz is adequate cause, if established, for expulsion or suspension from the University of North Carolina and that petitioner was aware of this at the time she was admitted to the University of North Carolina * * *."

It would seem that the above delegation of authority by the Executive Committee of the Board of Trustees of the University and by the Board of Trustees of the University was proper and constitutional. *John B. Stetson University v. Hunt*, 88 Fla. 510, 102 So. 637. See *Teeter v. Horner Military School*, 165 N.C. 564, 81 S.E. 767.

In *Tanton v. McKenney, supra*, which was heard on *certiorari* to review a judgment denying a writ of mandamus to compel defendant to reinstate plaintiff in the state normal school after refusal to readmit her because of alleged improper conduct, the Supreme Court of Michigan said:

"Inherently the managing officers have the power to maintain such discipline as will effectuate the purposes of the institution. * * * The right to attend our public schools is beyond question. That such right is tempered by, and subject to, proper regulations in the furtherance of discipline, is likewise beyond question. That, in the absence of an abuse of discretion, the school authorities, and not the court, shall prescribe proper disciplinary measures, is, we think, settled by the text-writers and the adjudicated cases."

From a consideration of Article IX, § 6, of our State Constitution, and of G.S. 116-1, 116-3, 116-4, 116-10, and 116-11, it is beyond dispute that the State of North Carolina, both by Constitution and by statute, has clothed the Board of Trustees of the University with authority to make such rules and regulations as they deem necessary and expedient for the management of the institution and for the preservation of student discipline therein, and it follows that the administrative decision of the full Board of Trustees of the University of North Carolina on 28 May 1962 adopting the report of its Special Committee that "the Board of Trustees should take no action; that the question of the readmission of Miss Carter to the University at Chapel Hill should be left where it has been placed by the Trustees and where it properly belongs — with the Chancellor and faculty at Chapel Hill" was the administrative decision of a State board authorized by the Constitution and statutes of the State to make administrative decisions, and this

was not an agency in the legislative or judicial branches of government, and not an agency governed by G.S. Ch. 150 (The Uniform Act for Licensing Agencies), and that there is no other applicable statute, other than G.S. Ch. 143, Art. 33, which contains adequate provisions for judicial review of petitioner's case. There can be no doubt that this decision of the full Board of Trustees on 28 May 1962 was rendered in a proceeding in which the legal rights of petitioner are affected; that the decision of the full Board of Trustees on 28 May 1962 in effect sustaining the action of the Women's Honor Council of Student Government of the University of North Carolina and of the Chancellor of the University at Chapel Hill and of the President of the University was required by law or constitutional right to be made after an opportunity for an agency hearing; and that petitioner had exhausted all administrative remedies made available by statute or the Board of Trustees before she applied for a judicial review pursuant to G.S. Ch. 143, Art. 33. In our opinion, and we so hold, G.S. Ch. 143, Art. 33, applies, and Judge Clark had jurisdiction to hear and determine petitioner's application for judicial review by virtue of this statute.

G.S. 143-315 provides:

"SCOPE OF REVIEW; POWER OF COURT IN DISPOSING OF CASE. — The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1)   In violation of constitutional provisions; or

(2)   In excess of the statutory authority or jurisdiction of the agency; or

(3)   Made upon unlawful procedure; or

(4)   Affected by other error of law; or

(5)   Unsupported by competent, material, and substantial evidence in view of the entire record as submitted; or

(6)   Arbitrary or capricious.

"If the court reverses or modifies the decision of the agency, the judge shall set out in writing, which writing shall become a part of the record, the reasons for such reversal or modification."

Petitioner has misconceived the effect of Judge Clark's order dated 28 December 1962. It is true Judge Clark's order states that in his

opinion "all of the evidence offered against Miss Carter fails to rebut the presumption of innocence," and in addition "her conviction therefore was not in accordance with due process under the Resolution of the Board or provision of the Student Constitution," and "to deny her readmission solely on grounds of the suspension for cheating on the evidence in this case would, in the opinion of this Court, be arbitrary and capricious," but his order does not reverse the decision of the full Board of Trustees. Judge Clark's order is not a final order determinative of the rights of the parties, as contended by petitioner, because his order remands the case for further specific proceedings, as he was authorized to do by G.S. 143-315. Consequently, Judge Williams properly dismissed petitioner's motion and the order to show cause theretofore issued by him.

Whether Judge Clark exceeded the scope of review vested in him by G.S. 143-315 is not before us for determination, because the parties neither excepted to nor appealed from his order, and the time for appeal has long passed. This part of Judge Clark's order stands in full force and effect:

> "Following the hearing in this Court, the Chancellor, through the Assistant Attorney General representing the Trustees, suggested that this case be remanded for further consideration in view of the evidence not known on review. This procedure appears entirely appropriate.

> "NOW, THEREFORE, this cause is remanded to the Board of Trustees of the University of North Carolina and the Board is directed to refer the matter to the proper administrative authority for a review of the proceeding, including the additional evidence disclosed in this Court and for such other and further administrative action as is appropriate."

This part of his order the Board of Trustees of the University of North Carolina will proceed with reasonable promptness to carry out. It appears from a recital in Judge Williams' order that at the time of his order the Board of Trustees had initiated proceedings to carry out Judge Clark's order.

Petitioner has two other assignments of error to Judge Williams' order, both in respect to the procedure to be followed upon his remand of petitioner's case for a rehearing. Both of these assignments of error present academic questions, because for the reasons stated above Judge Williams committed error in incorporating these matters in his order, and they will be stricken from his order.

McCALLUM v. INSURANCE CO.

The result is this: An order will be entered in the superior court of Wake County, when this opinion is certified down, striking from Judge Williams' order all it decrees and adjudges, except "that petitioner's motion and order to show cause heretofore issued in this cause be, and the same is hereby dismissed," which shall be affirmed. This leaves in effect and in force that part of Judge Clark's order quoted in the second paragraph of this opinion before this paragraph, to which there is neither exception to nor appeal from by the parties.

Modified and affirmed.